## UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOEL SNIDER, | : | CIVIL NO.: 4:15-CV-00951 |
| | : | |
| Plaintiff, | : | |
| | : | (Judge Brann) |
| v. | : | |
| | : | (Chief Magistrate Judge Schwab) |
| PENNSYLVANIA DOC, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## <u>REPORT AND RECOMMENDATION</u>

### I. Introduction.

On May 15, 2015, the plaintiff, Joel Snider ("Snider), a state prisoner proceeding *pro se*, commenced the above-captioned action by filing a complaint, an application to proceed *in forma pauperis*, and the requisite authorization form. *Docs. 1, 2, 3.* Since then, the Court has granted his application to proceed *in forma pauperis* (*doc. 36*), and Snider has filed, among many other documents, an amended complaint (*doc. 181*) pursuant to the provisions of 42 U.S.C. § 1983, the Americans With Disabilities Act ("ADA"), the Rehabilitation Act ("RA"), the Religious Land Use and Institutionalized Persons Act ("RLUIPA"), and *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971)

("*Bivens*").[1]   This matter comes back before the Court as United States District Court Judge Brann has instructed us, pursuant to 28 U.S.C. § 1915A and 42 U.S.C. § 1997e(a), to conduct a judicial screening of Snider's amended complaint.  *Doc. 170* at ¶ 14.  In accordance with Judge Brann's instruction, we have thoroughly reviewed the amended complaint, and we conclude that it should be dismissed for failing to meet relevant pleading standards.  We also conclude, however, that Snider should be granted leave to file a second amended complaint so that he has a final opportunity to comply with those pleading standards.

**II. The Amended Complaint.**

On November 27, 2017, with leave of Court (*doc. 179*), Snider filed a typed version of his amended complaint (*doc. 181*).  This typed version is 47 pages in length (*id.* at 1-47), and it includes an exhibit list, along with 76 pages of various exhibits (*id.* at 48-100; *doc. 181-1* at 1-22).  Then, on December 15, 2017, Snider filed a letter, explaining that he had found several typographical errors in that typed version of his amended complaint.  *Doc. 182*.  In his letter, Snider also delineates the necessary corrections for those errors.  *Id.*

---

[1] In *Bivens*, the United States Supreme Court "recognized for the first time an implied private action for damages against federal officers alleged to have violated a citizen's constitutional rights." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 66 (2001).  "[A]ctions brought directly under the Constitution against federal officials have become known as '*Bivens* actions.'" *Vanderklok v. United States*, 868 F.3d 189, 198 (3d Cir. 2017).

At the outset of his amended complaint, Snider identifies the parties to this action.  He characterizes himself as a prisoner in the custody of the Pennsylvania Department of Corrections, who is Hindu and suffers from various mental illnesses (*doc. 181* at ¶¶ 6, 20), and he names the following individuals and entities as defendants: (1) the Commonwealth of Pennsylvania and "some of its agencies[,]" the Pennsylvania State Police, the Pennsylvania Attorney General's Office, and the Pennsylvania Department of Corrections; (2) Union County, Pennsylvania; (3) Snyder County, Pennsylvania; (4) Clinton County, Pennsylvania; (5) John Wetzel, the Secretary of the Pennsylvania Department of Corrections ("Secretary Wetzel"); (6) Dorina Varner, the Chief Grievance Coordinator for the Pennsylvania Department of Corrections ("Chief Grievance Coordinator Varner"); (7) Shawn Cooper, the Deputy Warden of the Snyder County Prison; (8) David Blessings, a former Watch Commander at the Snyder County Prison; (9) "Carter," a Watch Commander at the Snyder County Prison; (10) "Suderland," an officer at the Snyder County Prison; (11) "McKeehan," an officer at the State Correctional Institution in Camp Hill ("SCI-Camp Hill"); (12) "Nichtman," an officer at SCI-Camp Hill; and (13) the United States (collectively referred to hereinafter as the "Defendants").  *Id.* at ¶¶ 7-19.

After identifying the parties, Snider then delves into a lengthy recitation of factual allegations, which are interspersed with both conclusions and accusations.[2] Those allegations are contained in 552 numbered paragraphs, and they encompass events that span the whole way from 2002 to 2016.  More specifically, the factual allegations stem from the time period when Snider initially experienced the onset of his mental health symptoms to when those symptoms worsened.  Per Snider, his worsening mental health led him to buy a gun and shoot another man, to him being investigated and arrested by the Pennsylvania State Police and prosecuted by attorneys from the Pennsylvania Attorney General's Office - - -ultimately pleading guilty and being sentenced, to him being confined in four different correctional institutions in Pennsylvania—Union County Prison, Snyder County Prison, Clinton County Prison, and the State Correctional Institution at Coal Township—and finally, more recently, to him filing two separate lawsuits in this United States District Court—the one that is presently before us and *Snider v. Warden Jacqueline Motter*, No. 4:13-CV-01226 (M.D. Pa.).  *See id.* at ¶¶ 20-572.

These factual allegations, which are drafted in a diary-like manner, set forth details (at times) on a day-by-day, week-by-week, and month-by-month basis. *See id.*  But all in all, they attempt to provide an account of Snider being repeatedly:

---

[2] Some of those accusations have been levied against the undersigned herself.  *See, e.g.*, *doc. 181* at ¶¶ 310-311, 344.

obstructed from accessing the courts; discriminated and retaliated against because of his disability (i.e., his various mental illnesses);[3] subjected to inhumane conditions of confinement; and denied participation in various programs, services, and activities, some of which are religious in nature. *See id.* Through his amended complaint, Snider seeks to hold the Defendants liable for this campaign of wrongful behavior, claiming that some of these Defendants had even made an agreement to engage in such wrongful behavior together. *See id.*; *see also id* at ¶¶ 577, 579.

In connection with these allegations, Snider raises claims under 42 U.S.C. § 1983, the ADA, the RA, RLUIPA, and *Bivens*. *Id.* at ¶ 1; *see also id.* at ¶¶ 573-585. He seeks both monetary and injunctive relief. *See id.* at ¶¶ 595-611. Notably, his request for injunctive relief comes in a variety of forms. *See id.* (requesting to be moved to a safe location, requesting to serve his sentence in Missouri, requesting that the campaign of harassment against him be brought to an end, requesting to have his Hindu statues and sacred stones returned to him, requesting to have time to sing in chapel twice a week, requesting to end the way the grievance systems are being used to retaliate against inmates, requesting to rewrite the Prison Litigation Reform Act exhaustion requirements, requesting that

---

[3] More specifically, Snider asserts that he has been diagnosed with schizophrenia, depression, and post-traumatic stress syndrome. *Doc. 181* at ¶ 20.

inmates, who have mental health and intellectual disabilities, be allowed to "access grievances" in Pennsylvania, and so forth).

Pursuant to United States District Court Judge Brann's instruction (*doc. 170* at ¶ 14), we have thoroughly reviewed Snider's amended complaint.  And, in accordance with the standard of review set forth below, we conclude that the amended complaint should be dismissed for failing to meet relevant pleading standards.  We also conclude, however, that Snider should be granted leave to file a second amended complaint so that he has a final opportunity to comply with those pleading standards.

## III. Screening of *Pro Se* Complaints—Standard of Review.

This Court has a statutory obligation to conduct a preliminary review of *pro se* complaints brought by prisoners given leave to proceed *in forma pauperis* in cases that seek redress against government officials.  Specifically, we are obliged to review the complaint in accordance with 28 U.S.C. § 1915A, which provides, in pertinent part:

> **(a) Screening.**—The court shall review, before docketing, if feasible or, in any event, as soon as practicable after docketing, a complaint in a civil action in which a prisoner seeks redress from a governmental entity or officer or employee of a governmental entity.
> **(b) Grounds for dismissal.**—On review, the court shall identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—
>     **(1)** is frivolous, malicious, or fails to state a claim upon which relief may be granted; or

**(2)** seeks monetary relief from a defendant who is immune from such relief.

Under § 1915A, the court must assess whether a *pro se* complaint "fails to state a claim upon which relief may be granted." This statutory text mirrors the language of Rule 12(b)(6) of the Federal Rules of Civil Procedure, which provides that a complaint should be dismissed for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6).

With respect to this benchmark standard for legal sufficiency of a complaint, the United States Court of Appeals for the Third Circuit has aptly noted the evolving standards governing pleading practice in federal court, stating that:

> Standards of pleading have been in the forefront of jurisprudence in recent years. Beginning with the Supreme Court's opinion in *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), continuing with our opinion in *Phillips [v. County of Allegheny,* 515 F.3d 224, 230 (3d Cir.2008)], and culminating recently with the Supreme Court's decision in *Ashcroft v. Iqbal* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), pleading standards have seemingly shifted from simple notice pleading to a more heightened form of pleading, requiring a plaintiff to plead more than the possibility of relief to survive a motion to dismiss.

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 209–10 (3d Cir. 2009).

"Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009). The statement required by Rule 8(a)(2) must give the defendant fair notice of what the plaintiff's claim is

and of the grounds upon which it rests.  *Erickson v. Pardus*, 551 U.S. 89, 93 (2007).  Detailed factual allegations are not required, but more is required than labels, conclusions, and a formulaic recitation of the elements of a cause of action. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "In other words, a complaint must do more than allege the plaintiff's entitlement to relief."  *Fowler*, 578 F.3d at 211.  "A complaint has to 'show' such an entitlement with its facts." *Id.*

In considering whether a complaint fails to state a claim upon which relief may be granted, the court must accept as true all well-pleaded factual allegations in the complaint, and all reasonable inferences that can be drawn from the complaint are to be construed in the light most favorable to the plaintiff.  *Jordan v. Fox Rothschild, O'Brien & Frankel, Inc.*, 20 F.3d 1250, 1261 (3d Cir. 1994).  A court, however, "need not credit a complaint's bald assertions or legal conclusions when deciding a motion to dismiss."  *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 906 (3d Cir. 1997).  Additionally, a court need not "assume that a . . . plaintiff can prove facts that the . . . plaintiff has not alleged." *Associated Gen. Contractors of Cal. v. California State Council of Carpenters,* 459 U.S. 519, 526 (1983).

In conducting a review of the adequacy of a complaint, the Supreme Court has advised trial courts that they must:

> [B]egin by identifying pleadings that because they are no more than conclusions are not entitled to the assumption of truth. While legal

8

conclusions can provide the framework of a complaint, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.

*Iqbal*, 556 U.S. at 679.

Thus, following *Twombly* and *Iqbal*, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, it must recite factual allegations sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation. In practice, consideration of the legal sufficiency of a complaint entails a three-step analysis:

> First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.' Second, the court should identify allegations that, 'because they are no more than conclusions, are not entitled to the assumption of truth.' Finally, 'where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief.'

*Santiago v. Warminster Twp.,* 629 F.3d 121, 130 (3d Cir. 2010) (quoting *Iqbal*, 556 U.S. at 675 & 679).

A complaint filed by a *pro se* litigant is to be liberally construed and "'however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers.'" *Erickson*, 551 U.S. at 94 (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). Nevertheless, "pro se litigants still must allege sufficient facts in their complaints to support a claim." *Mala v. Crown Bay Marina, Inc.*, 704 F.3d 239, 245 (3d Cir. 2013). Thus, a well-pleaded complaint must contain more than mere legal labels and conclusions. Rather, a *pro se*

9

complaint must recite factual allegations that are sufficient to raise the plaintiff's claimed right to relief beyond the level of mere speculation, set forth in a "short and plain" statement of a cause of action.

## IV. Discussion.

### A. Rule 8 of the Federal Rules of Civil Procedure.

Snider's amended complaint fails to comply with the requirement of Rule 8(a)(2) that it set forth a "short and plain statement of the claim" and the requirement of Rule 8(d)(1) that "[e]ach allegation must be simple, concise, and direct." FED. R. CIV. P. 8(a)(2), (d)(1).  Snider's amended complaint, which is 47 pages long and contains 552 numbered paragraphs, is needlessly long, highly repetitive, and largely verbose. *See Downing v. York Cty. Dist. Atty.*, No. 1:CV-05-0351, 2005 WL 1210949, at *2 (M.D. Pa. 2005) ("In the instant case, the Plaintiffs' Complaint is thirty-three pages long and contains 299 paragraphs, of which 280 constitute the factual background. This far exceeds the notice pleading provided for in the federal rules . . . . While it is not inappropriate to include some factual background, the amount of factual information provided by the Plaintiffs is unnecessary and unfairly cumbersome." (internal citations and quotations omitted)); *Burks v. City of Philadelphia*, 904 F. Supp. 421, 424 (E.D. Pa. 1995) (finding "a fact-laden, 36–page, 128–paragraph narrative that describes in unnecessary, burdensome, and often improper argumentative detail, every instance

of alleged [unlawful conduct] perpetrated by Defendants over [a two year period]" was a "gross departure from both the letter and the spirit of Rule 8(a)(2) . . .").

Furthermore, Snider's amended complaint mixes allegations of relevant facts and irrelevant facts, imposing an unjustifiable burden upon both the Court and the Defendants to cull out each cause of action asserted and the factual allegations underlying each cause of action. This unjustifiable burden is sharpened by the fact that Snider's factual allegations are largely presented as a rambling narrative, interspersed with accusations and incidents spanning over a period of 14 years. *See Cody v. Loen*, 468 F. App'x 644, 645 (8th Cir. 2012) (finding that the *pro se* litigant, whose complaint was lengthy and whose claims were either unrelated or overlapping and based on incidents which occurred over several years, was not excused from complying with procedural rules, including Rule 8 of the Federal Rules of Civil Procedure).

Thus, while we are mindful of Snider's status as a *pro se* prisoner, and our obligation to liberally construe his pleadings, we are as equally mindful that his *pro se* status does not excuse him from complying with the Federal Rules of Civil Procedure. *See generally McNeil v. United States*, 508 U.S. 106, 113 (1993) (providing that procedural rules in civil litigation should not be interpreted so as to excuse mistakes by those who proceed without counsel). Accordingly, Snider's

11

amended complaint should be dismissed for failing to comply with Rule 8 of the Federal Rules of Civil Procedure.

### B. Rule 20 of the Federal Rules of Civil Procedure.

Snider's amended complaint also fails to comply with Rule 20 of the Federal Rules of Civil Procedure. "For courts applying Rule 20 and related rules, 'the impulse is toward entertaining the broadest possible scope of action consistent with fairness to the parties; joinder of claims, parties and remedies is strongly encouraged.'" *Hagan v. Rogers*, 570 F.3d 146, 153 (3d Cir. 2009) (quoting *United Mine Workers of Am. v. Gibbs,* 383 U.S. 715, 724 (1966)).  Still, the liberal policy of joinder under Rule 20 does not mean that unrelated claims and defendants can be joined in one action. Rather, the requirements of Rule 20(a)(2), regarding joinder of defendants, must be satisfied, and that Rule provides that persons may be joined in one action as defendants if "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and . . . any question of law or fact common to all defendants will arise in the action."  FED. R. CIV. P. 20(a)(2).

In this case, Snider names a multitude of Defendants in his amended complaint. In addition, he raises claims that cover a 14-year period and that concern a variety of incidents, including incidents related to his arrest, his criminal prosecution, his sentencing, his confinement at four different correctional institutions in Pennsylvania,

as well as two separate lawsuits that he has filed in this United States District Court—the one that is presently before us and *Snider v. Warden Jacqueline Motter*, No. 4:13-CV-01226 (M.D. Pa.).  Thus, we conclude that Snider's claims are not sufficiently related to be joined in one action.  In particular, we conclude that they do not arise out of the same transaction, occurrence, or series of transactions or occurrences. Accordingly, the amended complaint should also be dismissed for failing to comply with Rule 20(a)(2).

### C. Other Deficiencies.

Having thoroughly reviewed the amended complaint, we also observe that some of Snider's claims are brought under 42 U.S.C. § 1983.  "Section 1983 imposes civil liability upon any person who, acting under the color of state law, deprives another individual of any rights, privileges, or immunities secured by the Constitution or laws of the United States." *Shuman v. Penn Manor School Dist.,* 422 F.3d 141, 146 (3d Cir. 2005).  Section 1983 "does not create any new substantive rights but instead provides a remedy for the violation of a federal constitutional or statutory right." *Id.* To establish a claim under § 1983, the plaintiff must establish a deprivation of a federally protected right and that this deprivation was committed by a person acting under color of state law. *Woloszyn v. County of Lawrence*, 396 F.3d 314, 319 (3d Cir. 2005).

In the amended complaint, Snider alleges, among other things, that the Defendants conspired against him to violate his rights in numerous and diverse ways. *See, e.g.*, *doc. 181* at ¶ 101 (alleging that some of the Defendants had "worked to" make it appear that Snider was violent and faking his mental illness and had tried to separate him from his attorneys in order to obstruct his access to the courts); *id.* at ¶ 121 (alleging that some of the Defendants "coordinated" with one another to harass Snider and to deny him mental health services); *id.* ¶ 245 (alleging that some of the Defendants "entered into an agreement" to house Snider in solitary confinement while he is in the custody of the Pennsylvania Department of Corrections).

"The essence of a conspiracy is an agreement." *United States v. Kelly,* 892 F.2d 255, 258 (3d Cir. 1989). To state a conspiracy claim under 42 U.S.C. § 1983 upon which relief can be granted, a plaintiff must allege "facts from which a conspiratorial agreement can be inferred." *Great Western Mining & Mineral Co. v. Fox Rothschild LLP,* 615 F.3d 159, 178 (3d Cir. 2010). "To properly plead such an agreement, 'a bare assertion of conspiracy will not suffice.'" *Id.* (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007)).

Here, however, although Snider alleges a vast conspiracy against him by some of the Defendants, he has not alleged facts from which such a conspiracy can be inferred. Thus, Snider's conclusory allegations of a conspiracy fail to state a claim upon which relief may be granted.

In addition, Snider raises allegations against Frank Fina, Eqsuire, one of the attorneys from the Pennsylvania Attorney General's Office who was allegedly appointed as the prosecutor in Snider's criminal case. *See, e.g.*, *doc. 181* at ¶¶ 35-36, 46-47, 97-99. Prosecutors, however, are shielded by absolute immunity for actions which are intimately associated with the judicial phase of the criminal process. *See Imbler v. Pachtman*, 424 U.S. 409, 430 (1976). Thus, to the extent that Snider is seeking to hold Frank Fina or any other prosecutor liable for actions intimately associated with the judicial phase of his prosecution, Snider's amended complaint also fails to state a claim upon which relief may be granted.

Furthermore, Snider raises allegations against high level officials—i.e., Secretary Wetzel and Chief Grievance Coordinator Varner—without setting forth facts from which it can reasonably be inferred that these officials were personally involved in the alleged violation of his rights. Liability under § 1983, however, "'cannot be predicated solely on the operation of respondeat superior.'" *Evancho v. Fisher,* 423 F.3d 347, 353 (3d Cir. 2005) (quoting *Rode v. Dellarciprete,* 845 F.2d 1195, 1207 (3d Cir. 1998)). In other words, a constitutional deprivation cannot be premised merely upon the fact that the defendant was a supervisor when the incidents set forth in the complaint occurred. *See Alexander v. Forr*, 297 F. App'x 102, 104-05 (3d Cir. 2008). Thus, "[b]ecause vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official

defendant, through the official's own individual actions, has violated the Constitution." *Iqbal*, 556 U.S. at 676. Accordingly, in the absence of such personal involvement on the part of these high level officials, Snider's amended complaint further fails to state a claim upon which relief may be granted.

Additionally, it appears that some of the claims Snider is raising are barred by the two-year statute of limitations that is applicable to 42 U.S.C. § 1983 claims. *See Fitzgerald v. Larson*, 769 F.2d 160, 162 (3d Cir. 1985) (reiterating that Pennsylvania's two-year limitations period for personal injury actions governs § 1983 actions). That limitations period begins to run when the plaintiff knows or has reason to know of the injury that constitutes the basis for the action. *Sandutch v. Muroski*, 684 F.2d 252, 254 (3d Cir. 1982) (per curiam); *accord Rose v. Bartle*, 871 F.2d 331, 348 (3d Cir. 1989). Thus, because some of the claims Snider raises accrued more than two years before he filed his amended complaint, it appears that those claims are barred by the statute of limitations.

Regarding Snider's ADA and RA claims, we reach a similar conclusion. Claims under the ADA and RA are also subject to Pennsylvania's two-year personal injury statute of limitations. *Disabled in Action of Pennsylvania v. S.E. Pa. Transp. Auth.*, 539 F.3d 199, 208 (3d Cir. 2008) (applying this two-year limitations period to ADA and RA claims). And again, that limitations period begins to run when the plaintiff knows or has reason to know of the injury that

16

constitutes the basis for the action. *See Powell v. Wetzel*, No. 1:12-CV-2455, 2016 WL 8731445, at *4 (M.D. Pa. Sept. 13, 2016), *report and recommendation adopted*, No. 1:12-CV-02455, 2016 WL 8710470, at *1 (M.D. Pa. Sept. 30, 2016). Thus, because some of the ADA and RA claims Snider raises accrued more than two years before he filed his amended complaint, it appears that those claims are also barred by the applicable statute of limitations.[4]

Finally, Snider has also attempted to allege a claim under *Bivens*. As noted above, a claim under *Bivens* is a private action for damages against federal officers who are alleged to have violated a citizen's constitutional rights. *Corr. Servs. Corp.*, 534 U.S. at 66. But, here, Snider has not named a single federal officer as a defendant in the amended complaint. Instead, he has named the United States. Sovereign immunity, however, bars claims against the United States, unless Congress has specifically waived such immunity. *See, e.g.*, *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 72 (2001) ("If a federal prisoner in a BOP facility alleges a constitutional deprivation, he may bring a *Bivens* claim against the offending individual officer, subject to the defense of qualified immunity. The prisoner may not bring a *Bivens* claim against the officer's employer, the United States, or the

---

[4] Although Snider did not file a typed version of his amended complaint until November 27, 2017 (*doc. 181*), he had originally filed a handwritten version on September 30, 2016 (*doc. 171*). Thus, for statute of limitations purposes, we deem the typed version of his amended complaint to have been filed on September 30, 2016.

BOP."); *Lewal v. Ali*, 289 F. App'x 515, 516 (3d Cir. 2008) ("*Bivens* claims against the United States are barred by sovereign immunity, absent an explicit waiver."). Here, Snider alleges no such waiver of sovereign immunity. Thus, Snider's amended complaint also fails to state a *Bivens* claim upon which relief may granted.

### D. Leave to File a Second Amended Complaint.

Consistent with our discussion above, Snider's amended complaint fails to state a claim upon which relief may be granted. But, before dismissing a complaint for failure to state a claim upon which relief may be granted under 28 U.S.C. § 1915A, a court must grant the plaintiff leave to amend his complaint, unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). In light of this liberal-amendment requirement, we conclude that, although this screening analysis calls for dismissal of Snider's amended complaint, he should be granted a final opportunity to comply with the requirements of the Federal Rules of Civil Procedure and to correct the deficiencies identified herein. Thus, we recommend granting Snider leave to file a second amended complaint.

Any second amended complaint shall be complete in all respects. It shall be a new pleading that stands by itself as an adequate complaint without reference to the amended complaint already filed. In addition, it shall not incorporate by reference

18

any previous complaint.  Finally, it shall be titled as a Second Amended Complaint, and it shall contain the docket number of this case.[5]

## V. Recommendations.

For the foregoing reasons, **IT IS RECOMMENDED** that the amended complaint (*doc. 181*) be **DISMISSED**.  **IT IS FURTHER RECOMMENDED** that Snider be **GRANTED LEAVE** to file a second amended complaint within **28 days** of United States District Court Judge Brann's Order granting such leave.

Parties are further placed on notice that pursuant to Local Rule 72.3:

Any party may object to a magistrate judge's proposed findings, recommendations or report addressing a motion or matter described in 28 U.S.C. § 636 (b)(1)(B) or making a recommendation for the disposition of a prisoner case or a habeas corpus petition within fourteen (14) days after being served with a copy thereof.  Such party shall file with the clerk of court, and serve on the magistrate judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations or report to which objection is made and the basis for such objections.  The briefing requirements set forth in Local Rule 72.2 shall apply.  A judge shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. The judge, however, need conduct a new hearing only in his or her discretion or where required by law, and may consider the record developed before the magistrate judge, making his or her own determination on the basis of that record.  The judge may also receive

---

[5] Snider should not include any allegations in his forthcoming second amended complaint that are duplicative of the allegations that are already being litigated in his other lawsuit before this Court—*Snider v. Warden Jacqueline Motter*, No. 4:13-CV-01226 (M.D. Pa.).

19

further evidence, recall witnesses or recommit the matter to the magistrate judge with instructions.

Submitted this **18th day** of **April, 2018**.

**_S/Susan E. Schwab_**
Susan E. Schwab
United States Chief Magistrate Judge