## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| **JOEL SNIDER** | : | **CIVIL ACTION** |
| | : | |
| v. | : | **NO. 15-951** |
| | : | |
| **PENNSYLVANIA DEPT. OF** | : | |
| **CORRECTIONS, *et al.*** | : | |

## MEMORANDUM

**KEARNEY, J.**                                                                    **September 30, 2019**

While serving a thirty to sixty-year sentence in state prison after pleading guilty to a murder

occurring over nine years ago, Joel Snider has taken offense to the Pennsylvania Department of

Corrections transferring him to a new facility. When he did not get immediate relief, he filed three

complaints with hundreds of allegations against dozens of Pennsylvania officials and now this

District Court essentially claiming their decisions violate his rights as a person wrestling with

attention deficit disorder, schizophrenia, bipolar disorder, post-traumatic stress disorder, and a

hearing impairment. He invokes our jurisdiction under the Americans with Disabilities Act,

Rehabilitation Act, and the civil rights law. He wrongly believes he enjoys a constitutional right

to a lawyer in these cases and courts should move quickly to resolve his claims. After review of

several of his repetitive and often bizarre *pro se* filings, we *sua sponte* ordered Mr. Snider and

Defendants to address whether we should hold a hearing on appointment of a guardian *ad litem*,

appoint a guardian with power to retain counsel, and consolidate his cases challenging access to a

lawyer and the courts as a prisoner filing cases. He appealed staying our progress. After studying

medical records, Mr. Snider's admission of competency, and following our Court of Appeals'

mandate divesting its jurisdiction from his appeal, we today find no basis to appoint a guardian *ad*

*litem* or consolidate Mr. Snider's claims against different parties relating to different time periods.

## I. Facts

As he admitted, Joel Snider murdered Jonathan Fenton on July 4, 2010.[1] Between July 7, 2010 and August 8, 2014, the Commonwealth of Pennsylvania held Mr. Snider in a facility as a pre-trial detainee.[2] On August 8, 2014, Union County Court of Common Pleas President Judge Michael T. Hudock sentenced Joel Snider to thirty to sixty years in state prison for third degree murder.[3] He remains in state custody today.

It appears he initially took offense to his conditions of confinement and a possible transfer among Pennsylvania's correctional institutions. Mr. Snider, blessed with a 132 IQ, filed this case in 2015 challenging the conduct of the Commonwealth of Pennsylvania and a variety of its agents regarding his ability to access courts as a self-described disabled person suffering from mental illnesses including attention deficit disorder, a form of schizophrenia, bipolar disorder, post-traumatic stress disorder, and a hearing impairment. He sues to redress grievances with his confinement including a transfer to a facility in 2013. He claims multiple state actors violated the Americans with Disabilities Act and his rights under the First and Fourteenth Amendments. He failed to timely amend but judges allowed him leave to file a second amended complaint which is presently subject to a motion to dismiss from Union County and Warden Shaffer.[4]

He then *pro se* sued officials with the Department of Corrections in No. 18-801 challenging their treatment of him since 2017. He also sued judicial officers in this District in No. 18-1789 requiring our Court of Appeals to assign this case to our docket

After reviewing dozens of his filings where he repeatedly seeks relief for being denied access to the courts as a person with an alleged mental illness, we *sua sponte* ordered the parties show cause why we should not hold an evidentiary hearing and review medical records relating to Mr. Snider's mental condition.[5] We simultaneously denied Mr. Snider's request for

2

appointment of counsel in a civil proceeding but, concerned he may need a guardian *ad litem*, we stayed an analysis of Union County's and Warden Shaffer's pending motion to dismiss his second amended complaint.[6] Mr. Snider sought an extension and then appealed our interlocutory order.[7] Our Court of Appeals recently dismissed the appeal for lack of jurisdiction, returning the case to us.[8]

We now return to the issue of whether we should appoint a guardian *ad litem* to represent Mr. Snider's interests. If so, the guardian may seek to retain counsel. We begin by reviewing Mr. Snider's history, particular in filings before us.

### *Mr. Snider's ability to proceed.*

Mr. Snider, admittedly blessed with a 132 IQ, argues he "has a long and documented history of treatment for mental illness."[9] After listing his mental illnesses, Mr. Snider cites a Missouri court's adjudication of his disability—for Social Security Disability Income purposes— and his Guilty But Mentally Ill plea in his underlying Pennsylvania murder case as adjudications sufficient to render him incapacitated.[10]

Mr. Snider repeatedly cites and describes the Federal Rules of Civil Procedure, the local rules of the United States District Court for the Middle District of Pennsylvania, the Americans with Disabilities Act, the Rehabilitation Act, the Religious Land Use and Institutionalized Persons Act, and case law interpreting these statutes. He vigorously engages in the litigation process and is acutely aware of filing deadlines, the importance of an accurate docket, and procedures he must follow. In his three pending civil actions, Mr. Snider demonstrates an ability to receive and evaluate information effectively. The docket in this case alone reflects over 290 entries: Mr. Snider filed, to date, eighty motions,[11] twenty-seven briefs,[12] eight objections to Magistrate Judge Schwab's Reports and Recommendations and Judge Brann's orders,[13] and several amended

3

complaints.[14] Mr. Snider's motion practices includes a motion for leave to proceed *in forma pauperis*, multiple motions to appoint counsel, a motion for class certification, motions for temporary restraining orders, motions for preliminary injunctions, discovery motions, a motion for recusal, motions for extensions of time, motions for sanctions, and motions for status updates. And Mr. Snider appealed to our Court of Appeals.

## *Mr. Snider's complaint.*

Mr. Snider's initial twenty-page complaint included seven attachments: "(1) Class Action Complaint; (2) Exhibit 1; (3) Motion for Class Certification; (4) Brief in Support of Class Certification; (5) Motion for Appointment of Counsel; (6) In Forma Pauperis Application and Authorization; (7) Summons."[15]

Mr. Snider plead jurisdiction under 28 U.S.C. §§ 1331 and 1342(a)(3).[16] He sought declaratory relief under 28 U.S.C. §§ 2201 and 2202, and claimed 28 U.S.C. §§ 2283 and 2284, as well as injunctive relief under Federal Rule of Civil Procedure 65.[17] He plead our venue "under 28 USC section 1391 (b)(2) . . . it is where the majority of the events giving rise to this claim occurred; the place of business of the Governor, Attorney General, and [Pennsylvania Department of Corrections] are located there, as well as most of the defendants."[18] Mr. Snider explained he exhausted administrative remedies and documented each step he took in the administrative remedy process.[19] Mr. Snider plead eighty-nine paragraphs of facts, and requested various injunctive relief and damages.

He attached an Exhibit 1 "A Presentation About Prisons, Mental Health Institutions, State and Federal Courts in Pennsylvania. A Request for Relief to President Barack Obama and First Lady Michelle Obama."[20] It included a six-page table of contents, separated into seven sections

4

with numerous sub-sections.[21] In total, Mr. Snider's complaint and attachments totaled 232 pages.

## *Mr. Snider's first motion for appointment of counsel.*

Shortly after filing his complaint, Mr. Snider moved for appointment of counsel.[22] He argued: (1) his complaint raised issues too complicated for him to litigate alone; (2) he could not conduct necessary legal research while incarcerated; (3) he could not "adequately protect the interest of the class" in his putative class action due to his "lack of legal education;" (4) he is disabled and the Americans with Disabilities Act requires "[r]egular support" to be made available; and, (5) he would like help to amend the complaint.[23]

## *Mr. Snider's brief in support of his motion for class certification.*

Mr. Snider filed a comprehensive brief supporting his motion for class certification.[24] He cited our Court of Appeals' decision in *Hassine v. Jeffes* to support his argument "[c]lass certification 'is an especially appropriate vehicle for actions seeking prison reform.'"[25] Mr. Snider explained Federal Rule of Civil Procedure 23(a)'s four requirements for class certification, and how his putative class satisfied each requirement.[26]

Mr. Snider discussed Federal Rule of Civil Procedure 23(b)(2) and the appropriateness of injunctive relief.[27] Finally, Mr. Snider pointed to past class action litigation regarding prison conditions and reform.

## *Mr. Snider's motion to preserve evidence and brief in support.*

Mr. Snider identified specific evidence relevant to his claims and moved Magistrate Judge Schwab to order the evidence preserved.[28] He identified evidence including: (1) prison transfer orders; (2) medical records; (3) disciplinary records; (4) copies of his own correspondence; (5) his mental health records; (6) confiscated personal property; (7) security camera footage; and (8)

grievances concerning specific Department of Corrections officers.[29] Mr. Snider also briefed his preservation argument.[30] He noted he "diligently followed the requirements of the [Prison Litigation Reform Act]."[31]

### *Mr. Snider's objection to Magistrate Judge Schwab's Order denying Mr. Snider's motion to withdraw documents.*

Mr. Snider moved under Federal Rule of Civil Procedure 72 and 28 U.S.C. § 636(b)(1)(C).[32] He recited the relevant procedural history, the filing date of Magistrate Judge Schwab's order and the timeliness of his objection, the substance of his specific objections, and argument supporting his objections.[33] In calculating the timeliness of his response, Mr. Snider answered "[a]ccording to [Federal] Rule [of Civil Procedure] 6(d) . . . because the Order was served on [Mr. Snider] by mail, [he] has an additional three days to respond from the date of 9-22-15."[34] Mr. Snider stated he filed documents according to the "*Prisoners' Mailbox Rule: Houston v. Lack 108 S. Ct. 2379 (1988).*"[35]

### *Mr. Snider's brief in support of his motion for leave to file documents directly with the court rather than provide individual service to all defendants.*

Mr. Snider cited Federal Rule of Civil Procedure 5(b)(2)(E) to support his request to file documents directly with the court rather than serve each defendant.[36] While explaining how the electronic case filing system works, Mr. Snider pointed to Local Rules 5.6 and 5.7 of the United States District Court for the Middle District of Pennsylvania.[37] Mr. Snider argued because prisoners do not have access to the internet, email or the electronic case filing system, they are required to make "numerous photocopies, complet[e] cash slips, purchas[e] envelopes and paper, [and] maintain[] sufficient funds for postage."[38]

6

Mr. Snider claims there is a "significant mail delay" between the prison and the federal courthouse.[39] He could not work in prison and "must rely on the charity of friends and family for his finances."[40]

### *Mr. Snider's brief in support of his motion for exemption from seeking remedies within the Pennsylvania Department of Corrections.*

Mr. Snider discussed the requirements of the Prison Litigation Reform Act, including citations to several United States Supreme Court cases interpreting the Act's exhaustion requirement.[41] He explained his compliance with the exhaustion requirement, including a detailed facts section, and why Magistrate Judge Schwab should exempt Mr. Snider from continuing pursuit of remedies within the Pennsylvania Department of Corrections.[42]

He then pointed to decisions in numerous federal district courts nationwide finding correctional authorities' remedies unavailable or insufficient.[43] Finally, Mr. Snider requested Magistrate Judge Schwab "declare [Mr. Snider] has adequately sought remedies in fulfillment of 42 U.S.C. 1997e(a) for all of his claims in the Pennsylvania Department of Corrections from the time he entered on May 7, 2013."[44]

### *Mr. Snider's Rule 60(b)(1) motion for relief from Magistrate Judge Schwab's Order.*

Mr. Snider complained of conduct at a December 1, 2015 scheduling conference.[45] He argued Magistrate Judge Schwab "facilitated a fast paced oral argument on many motions" and "[i]t was unfair to require [Mr. Snider] to engage in this type of proceeding unrepresented by an attorney."[46] Mr. Snider arrived late to the conference, and when he arrived, "Magistrate Schwab and Counsel for Defendants were already engaged in discussions about the case," and "Magistrate Schwab . . . willingly engag[ed] in this ex-parte communication."[47] Mr. Snider felt his lack of

preparation unfair "especially considering the diligence [he] has shown despite his limitations and as a Pro se litigant . . . ."[48]

### *Mr. Snider's objection to Magistrate Judge Schwab's Order denying class certification.*

Mr. Snider objected to Magistrate Judge Schwab's order denying class certification under Federal Rule of Civil Procedure 72(b)(2) and 28 U.S.C. § 363 (b)(1)(C).[49] Mr. Snider cited 28 U.S.C. § 636(b)(1)(A), arguing Magistrate Judge Schwab could not rule on class certification.[50] He also pointed to Federal Rule of Civil Procedure 23(g)(1) and its requirement to appoint class counsel when a district court certifies a class.[51]

Mr. Snider disagreed with Magistrate Judge Schwab's suggestion each inmate file individual *pro se* complaints.[52] He argued "the barriers on class members including their financial and disability limitations as well as the consistent and well established punishment for litigation . . . will restrict individual class members from advocating for themselves."[53]

### *Mr. Snider's motion to supplement his complaint.*

Mr. Snider moved under Federal Rule of Civil Procedure 15 to supplement his complaint.[54] He recognized *pro se* pleadings "'however inartfully pleaded' must be held to 'less stringent standards than formal pleadings drafted by lawyers.'"[55]

### *Mr. Snider's request to correct the docket.*

Mr. Snider wrote to the clerk of the United States District Court for the Middle District of Pennsylvania requesting a docket correction.[56] He explained Judge Brann's September 30, 2016 Order "did not terminate any defendant from this case, however, numerous defendants are listed as 'terminated: 9/30/16' on the docket."[57] Additionally, Mr. Snider described the discrepancy between the case caption's listing of "Pennsylvania" as a defendant but the "Commonwealth of Pennsylvania" as a separate defendant.[58] He explained "whether Pennsylvania can be a defendant under the Americans with Disabilities Act and Rehabilitation Act is a question of law, and no

8

decision has been made in this case since filing the amended complaint."[59] He cites our Court of Appeals' decision in *Koslow v. Pennsylvania*[60] as an example of the Commonwealth's status as a defendant in a similar case.[61]

### *Mr. Snider's objections to Magistrate Judge Schwab's screening of his amended complaint.*

Mr. Snider objected to Magistrate Judge Schwab's screening and dismissal of his amended complaint.[62] He included a standard of review and explained the "District Judge must 'determine de novo any part of the magistrate judge's disposition that has been properly objected to.'"[63] Mr. Snider further explained the reasonable accommodation courts grant *pro se* litigants and requested Judge Brann consider his *pro se* status: "[I] am Pro se and do not know how to 'properly' object . . . ."[64] He again discussed the alleged improper termination of defendants and requested Judge Brann ensure the docket properly reflect the status of all defendants.[65]

Mr. Snider dedicated a section of his objections to exploring whether the Commonwealth of Pennsylvania could be sued under the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, the Rehabilitation Act, 29 U.S.C. § 701 *et seq.*, and the Religious Land Use and Institutionalized Persons Act, 42 U.S.C. § 2000cc *et seq.*[66] He explained the language of each statute, our Court of Appeals' applicable case law, and why each statute permits him to name Pennsylvania a defendant.[67]

Mr. Snider argued Magistrate Judge Schwab's interpretation and application of sovereign and prosecutorial immunity are incorrect.[68] Mr. Snider alleged certain misconduct "not intimately connected with [defendant Frank Fina, a Pennsylvania prosecutor] presenting a case in court, and so [Mr. Fina] would not be immune."[69] Then Mr. Snider argued the Commonwealth of Pennsylvania and the Department of Corrections were not immune because the United States Congress abrogated the parties' immunity in certain statutory claims.[70]

9

Mr. Snider also argued he properly joined parties under Federal Rule of Civil Procedure 21.[71] He later submitted a table of contents and table of authorities to supplement this objection.[72]

## II.  Analysis

After transfer of this case to our docket because he sued this Court and we are a member of another District Court, Mr. Snider again began seeking appointment of counsel. His arguments rambled and showed a lack of focus. He repeatedly requested the same relief in several filings. He repeatedly referred to mental health issues. We ordered all parties show cause why we should not allow limited medical examination and hold an evidentiary hearing regarding Mr. Snider's competency under Federal Rule of Civil Procedure 17(c)(2).[73]

Rule 17(c)(2) concerns an incompetent person without a representative:

[A]n incompetent person who does not have a duly appointed representative may sue by a next friend or by a guardian ad litem. The court must appoint a guardian ad litem—or issue another appropriate order—to protect [an] incompetent person who is unrepresented in an action.[74]

Our Court of Appeals, in *Powell v. Symons*, explained Rule 17(c)(2) frames appointment of a guardian *ad litem* in the imperative—a district court *must* appoint a guardian to an incompetent, unrepresented person—but "there is no suggestion which factors should trigger the district court's duty of inquiry as to whether the individual at issue is incompetent."[75] As a result, "responsibility for Rule 17 appears generally to be left to the discretion of the district courts."[76] Some courts in our circuit recite medical reports and conclude it need not conduct a hearing.[77] Others rely solely on the litigant's statements.[78] But our Court of Appeals has not explained how we must analyze a Rule 17 claim.

All served defendants jointly responded and argued we should not hold an evidentiary hearing on the appointment of a guardian *ad litem*.[79] They argue there is "no evidence or indication of 'incompetency'" in Mr. Snider's filings.[80] "[Mr. Snider] demonstrate[s] an ability to be

10

analytical, to communicate his ideas effectively, and to adequately support his own interests –
specifically, he can review and understand Orders by the Court, review applicable law and rules,
organize his points, make rational arguments, and cite supporting legal authority."[81]  Finally, they
argue no court adjudicated Mr. Snider legally incompetent, and no mental health professional
found Mr. Snider legally incompetent.[82]

We are also persuaded by Mr. Snider representing himself as competent in earlier
litigation.[83]

### A. No hearing is warranted.

Our Court of Appeals in *Powell* identified "the factors warrant[ing] *sua sponte* inquiry into
a litigant's capacity to sue or be sued."[84]  It adopted the United States Court of Appeals for the
Second Circuit's standard in *Ferrelli v. River Manor Health Care Center*[85]: the "duty of inquiry
involves a determination of whether there is verifiable evidence of incompetence."[86]  We may
abuse our discretion if we:

> fail[] to consider whether Rule 17(c) applie[s] "[i]f [we] were presented with
> evidence from an appropriate court of record or a relevant public agency indicating
> . . . [Mr. Snider] had been adjudicated incompetent, or if [we] received verifiable
> evidence from a mental health professional demonstrating . . . [Mr. Snider] is being
> or has been treated for mental illness of the type that would render him . . . legally
> incompetent."[87]

Our Court of Appeals in *Powell* also concluded "bizarre behavior alone is insufficient to
trigger a mandatory inquiry into a litigant's competency but 'if there has been a legal adjudication
of incompetence . . . brought to the court's attention, [Rule 17's] provision is brought into play.'"[88]
But our Court of Appeals in *Powell* only speaks to *when* we must consider the application of Rule
17, not *what* we consider when evaluating a litigant's competency under Rule 17.

Some courts apply our Court of Appeals' decision in *Powell* and reject the need for a *sua
sponte* inquiry into the litigant's competency.[89]  For example, in *Brooks v. Bledsoe*,[90] Judge

Schwab considered Mr. Brooks' motion to appoint counsel.[91] Judge Schwab found Mr. Brooks "has not provided any verifiable evidence of incompetence triggering the Court's duty of *sua sponte* inquiry" into his competency and "to date, Brooks has not demonstrated any level of legal incompetence."[92] She denied Mr. Brooks' motion for counsel and did not make any determination regarding Mr. Brooks' competence, as Mr. Brooks did not trigger the Rule 17 inquiry.

Judge Saporito found diagnoses of mental illness without evidence the illness renders a litigant legally incompetent insufficient to warrant a guardian *ad litem*.[93] He reviewed the plaintiff's pleadings and motion papers and found "he understands the nature of the action he has commenced, . . . he has demonstrated adequate 'ability to organize his points, make rational arguments, and cite supporting legal authority,' and . . . his filings are 'coherent and logical.'"[94]

We may find litigants incompetent without holding a hearing. In *Wright v. Wenerowicz*,[95] Judge Leeson appointed a psychiatrist and a psychologist to evaluate Mr. Wright's competency.[96] Those doctors found Mr. Wright "incompetent to make a knowing, intelligent, and voluntary decision . . . ."[97] Judge Leeson decided "[c]ompetency is determined by reference to state law, and '[u]nder Pennsylvania law ... once a person is adjudicated incompetent, s/he is deemed incompetent 'for all purposes until, by court order, the status of incompetency is lifted.'"[98] Because Pennsylvania courts adjudicated Mr. Wright incompetent, and no court changed his competency status, Judge Leeson ordered a guardian *ad litem* under Rule 17(c) in Mr. Wright's section 1983 case.[99]

Only one judge in our circuit conducted a hearing under Rule 17(c)(2).[100] In *Jackson v. Pennsylvania Department of Corrections*,[101] Mr. Jackson moved for reconsideration of Chief Judge Kelly's Order denying his earlier motion for appointment of counsel.[102] Judge Kelly "considered [Mr. Jackson's] Motion for Reconsideration [of the court's prior order denying Mr.

Jackson's motion for appointment of counsel under] Rule 17(c)(2)."[103] As part of a hearing on several motions, Judge Kelly reviewed Mr. Jackson's medical records and heard testimony from Mr. Jackson concerning his competency.[104] She found him articulate and able to understand the proceedings.[105] Ultimately, she identified Mr. Jackson's limited reading ability, frequent delusions, and prior appointment of counsel based on his mental illness as factors she considered in appointing Mr. Jackson counsel.[106] Judge Kelly did not separately address Mr. Jackson's competency or whether he required a guardian *ad litem*.

We could also retain psychiatrists to "conduct mental competency evaluations" to determine if a litigant could represent himself.[107] Judge Walls refused to permit a litigant proceed *pro se* until the two psychiatrists determined his competency.[108] The psychiatrists submitted their reports and Judge Walls held a competency hearing at which the litigant appeared.[109] He found the plaintiff incompetent to represent himself and refused to permit him to proceed *pro se*.[110]

We may also *sua sponte* raise the issue of a litigant's competency.[111] Judge Christian found "a factual issue has been raised as to whether the plaintiff . . . is mentally competent to understand the meaning and effect of the legal proceedings he has instituted."[112] He noted "[w]hen the competency of a party is raised, a court may require the party to submit to a psychiatric examination, so . . . the court may have the medical facts on which its decision on the necessity of a pointing a guardian ad litem can be based."[113] Judge Christian "ha[d] been given cause to question the mental competency of the plaintiff not only because of the nature and substance of plaintiff's complaints, but also because they are so numerous and, in substance, alike."[114] He decided to schedule a hearing and question the plaintiff.[115] "Such a hearing will afford the court an opportunity to observe the plaintiff's behavior and lucidity. If, at the completion of the hearing, we determine . . . plaintiff's mental capacity remains at issue, we will

appoint a psychiatrist to conduct a mental examination of the plaintiff."[116] Judge Christian made no finding of fact, and our Court of Appeals affirmed the decision.

Other Courts of Appeals define incompetency. The United States Court of Appeals for the Eleventh Circuit concluded "[t]he term 'incompetent' in Rule 17(c)(2) generally means a person who lacks the capacity to litigate under the law of his state of domicile, and here it appears . . . Mr. Williams—despite his treatment for mental health issues—was able to adequately litigate his claims."[117] It distinguished *Powell* because "the plaintiff there 'had been adjudicated incompetent in the simultaneous criminal proceeding.'"[118]

We need not hold a hearing to determine Mr. Snider's incompetency under Rule 17(c)(2). The competency decision is discretionary, and our Court of Appeals in *Powell* only defines the duty of inquiry a judge faces when there is verifiable evidence of incompetence. There is no basis to find Mr. Snider incompetent as he now admits.

## A.    Our standard to evaluate Mr. Snider's incompetency.

Neither *Powell* nor any other case directs district courts' competency inquiries. Other judges relied solely on submitted medical records or court filings, some look to prior adjudications of incompetence or documentary evidence of mental illness rendering a litigant legally incompetent, still others hold hearings and decide competency based on the lucidity of the litigant. There is no uniform approach to determining incompetency in civil actions.

The Commonwealth urges us to assess Mr. Snider's competency under Pennsylvania's definition of an "Incapacitated Person."[119] It cites *Richards v. Duke University*,[120] instructing "[w]hile Rule 17(c) does not provide a standard for determining competency, Rule 17(b) provides . . . the capacity of a party to sue or be sued shall be determined by the law of the party's domicile."[121] Pennsylvania defines an "incapacitated person" as "an adult whose ability to receive

and evaluate information effectively and communicate decisions in any way is impaired to such a significant extent that the person is partially or totally unable to manage financial resources or to meet the essential requirements for physical health and safety."[122]

## B. No court declared Mr. Snider incompetent.

No court adjudicated Mr. Snider incompetent. Mr. Snider contends a Saint Louis, Missouri court adjudicated him "so severely disabled he could not work" in connection with a 2004 Social Security proceeding, appointing his father as payee on the awarded disability benefits.[123] Mr. Snider additionally cites his 2014 adjudication in a Pennsylvania criminal action where the Court of Common Pleas of Union County accepted Mr. Snider's plea of "Guilty but Mentally Ill" based on the opinions of a psychiatrist and a psychologist.[124] In this case, Mr. Snider's psychiatrist opined:

> During my examination, Mr. Snider had no difficulty demonstrating competency-related knowledge and skills. He was well aware of the nature of the charges against him, appreciated the seriousness of the charges, acknowledged the evidence likely to be presented against him, and knew the potential penalties he could face if found guilty. He was easily able to discuss the roles and functions of important courtroom personnel. He was aware of the nature of the available plea process and demonstrated knowledge of basic courtroom procedures. He did not demonstrate any deficits in his ability to assist his counsel in his defense.

> Accordingly, **Mr. Snider does possess the mental capacity to assist counsel in his defense and the capacity to stand trial on his current criminal charges.**[125]

This evidence does not support a finding of incompetency.

## C. Mr. Snider's medical and mental health records do not demonstrate incompetency.

Mr. Snider's medical records produced by the Department of Corrections for our *in camera* review demonstrate no mental illness "of the type . . . render[ing] him legally incompetent."[126] As of February 19, 2019, the Department of Corrections diagnosed Mr. Snider with Antisocial Personality Disorder, Borderline Personality Disorder, and Unspecified Bipolar

15

and Related Disorder. His current medications included: (1) 5mg of Aripiprazole (Abilify), an antipsychotic medication used to treat schizophrenia, bipolar disorder, and depression; (2) 200mg of Lamotrigine (Lamictal), an anticonvulsant used to treat seizures and bipolar disorder; (3) 20mg of Propranolol (Inderal), a Beta blocker used to treat migraines, chest pain, and uneven heartbeat; and, (4) a 45mcg Xopenex HFA (Levalbuterol) inhaler, used as needed for shortness of breath.

Mr. Snider's medical records document his ongoing struggles with mental illness. But the records do not suggest he is incompetent. Mr. Snider plays an ongoing role in his mental health treatment plan, agreeing to changes in medication and positive action steps to help himself. He has demonstrated an active role and continuing involvement in his care and his legal theories.

## D. We will not consolidate Mr. Snider's pending actions.

We also directed the parties submit a status memorandum explaining the relationship between this case and the case Mr. Snider filed and presently pending at No. 18-801, including the possibility of consolidating the actions.[127] We decline to consolidate the cases. We need not address his third case (against the United States and this District Court) at No. 18-1789 as it is currently dismissed and on appeal.

Federal Rule of Civil Procedure 42 governs our ability to consolidate two or more cases.[128] Rule 42 states:

(a) Consolidation. If actions before the court involve a common question of law or fact, the court may:

(1) join for hearing or trial any or all matters at issue in the actions;

(2) consolidate the actions; or

(3) issue any other orders to avoid unnecessary cost or delay.[129]

Consolidation of separate actions presenting a common issue of law or fact is permitted as a matter of convenience and economy in judicial administration.[130] In a motion for consolidation, the

moving party bears the burden of proof.[131] While we retain broad discretion in deciding whether to consolidate, we must balance the potential for prejudice, expense, or confusion against the benefits of judicial economy.[132] We may deny Mr. Snider's motion to consolidate "if the common issue is not a principal one, or if it will cause delay in one of the cases, or will lead to confusion or prejudice in the trial of a case."[133]

In this action, 15-951, Mr. Snider complains of wide-ranging abuses and discrimination beginning with his pretrial detention in Union County in 2010.[134] In the 18-801 action, Mr. Snider complains of "specific facts regarding his incarceration and mental health care from 2017 to present."[135] He alleges retaliation and discrimination at SCI-Somerset because he assists other inmates with filing prison grievances and other documents.[136]

As Judge Stengel explained in *Easterday*, "[a]lthough both cases involve similar legal claims and facts, the distinctions between these cases are considerable enough to cancel any benefit gained by consolidation."[137] While Mr. Snider's complaints address similar legal claims, the facts and defendants vary.[138] Though the two cases are similar, there are several key differences, including the named parties in the actions and the relief Mr. Snider seeks. Consolidation is inappropriate.

## III.    Conclusion

Our Court of Appeals most closely addressed today's issue in *Powell v. Symons*.[139] It noted "[r]esponsibility for Rule 17 appears generally to be left to the discretion of the district courts."[140] There is no uniform competency test for civil litigants. Mr. Snider repeatedly asserted his competency to represent himself in concurrent civil actions.[141] We are not required to conduct a hearing and can rely on evidence in the record to deny Mr. Snider a guardian *ad litem*.

Based on Mr. Snider's own statement of competency, his vigorous and thorough advocacy in this and other actions, the lack of adjudication of incompetency by any court, and lack of medical evidence demonstrating mental illness of the type rendering him legally incompetent, we conclude Mr. Snider is competent under Fed. R. Civ. P. 17(c)(2). We also deny Mr. Snider's motion to consolidate this action (No. 15-951) and his other pending action (18-801) because the two actions, while similar, reflect significant differences most appropriately addressed separately. We will now proceed to resolve his claims on the merits in the two separate cases.

---

[1] ECF Doc. No. 277-3 at 8.

[2] *Id.* at 3.

[3] *Id.*

[4] ECF Doc. No. 247.

[5] ECF Doc. No. 246.

[6] *Id.*

[7] ECF Doc. No. 274.

[8] ECF Doc. No. 291.

[9] ECF Doc. No. 277 at 3.

[10] *See id.* at 6.

[11] *See* ECF Doc. Nos. 3-5, 10, 12, 15, 17, 19-21, 23, 25, 28, 32, 39, 43, 53, 60, 73, 75, 77-78, 80, 84-86, 88, 94-97, 99, 101-02, 104, 111, 113-16, 122, 126-30, 135-36, 138, 141, 144, 147, 150, 160, 200, 203, 210, 214, 217-19, 222, 225, 227, 232, 234, 249-50, 255, 258-59, 265, 270, 272, 279, 283, 285, and 289.

[12] *See* ECF Doc. Nos. 6, 11, 13, 16, 18, 22, 24, 26, 29, 33, 40, 54, 61, 81, 112, 123, 142, 151, 153, 161, 176, 211, 223, 228, 235, 256, and 260.

[13] *See* ECF Doc. Nos. 103, 119, 132-33, 145, 152, 208, and 238.

[14] *See* ECF Doc. Nos. 1 (Complaint), 181 (amended Complaint), and 237 (second amended Complaint).

[15] *See* ECF Doc. No. 1 at ¶21.

[16] *Id.* at ¶ 1.

[17] *See id.*

[18] *Id.* at ¶ 2.

[19] *See id.* at ¶ 28 ("Plaintiff filed grievances at Union County Prison. There was no response. Plaintiff filed grievances at Torrence State Hospital. There was no response. Plaintiff mentioned the issues in the Union County Court of Common Pleas, and to the Attorney General's Office. Plaintiff filed grievances at SCI Coal, SCI Camp Hill, SCI Graterford, SCI Greene. From these grievances came obstruction, retaliation, assault, damage of religious property and manipulation of the grievance procedures. Plaintiff wrote to Secretary's Office of Inmates' Grievances and Appeals about these issues. When this failed, Plaintiff wrote to [Department of Corrections] Secretary Wetzel. When this brought further retaliation, Plaintiff wrote to the Federal Court. When this failed, Plaintiff wrote to President Obama. Plaintiff has exhausted his administrative remedies.").

[20] ECF Doc No. 1-1 at 2.

[21] *See id.* at 3-8.

[22] *See* ECF Doc No. 4.

[23] *Id.* at ¶¶ 1-5.

[24] *See* ECF Doc No. 6.

[25] *Id.* at 1 (citing *Hassine v. Jeffes*, 846 F.2d 169, 180 (3d Cir. 1988)).

[26] *See id.* at 1-3.

[27] *See id.* at 3.

[28] *See* ECF Doc No. 19.

[29] *See id.*

[30] *See* ECF Doc. No. 22.

[31] *Id.* at 2.

[32] *See* ECF Doc. No. 46 at 1.

[33] *See id.* at 1-3.

[34] *Id.* at 2.

[35] *Id.* at ¶ 22.

[36] *See* ECF Doc. No. 54 at ¶ 3.

[37] *See id.* at ¶ 4.

[38] *Id.* at ¶ 5.

[39] *See id.* at ¶ 8.

[40] *Id.* at ¶ 9.

[41] *See* ECF Doc. No. 81. Mr. Snider cited *Jones v. Bock*, 549 U.S. 199 (2007); *Woodford v. Ngo*, 548 U.S. 81 (2006); and *Porter v. Nussle*, 534 U.S. 526 (2002). *Id.* at ¶ 6.

[42] *See id.*

[43] *See id.* at ¶ 58.

[44] *Id.* at ¶ 61.

[45] *See* ECF Doc. No. 84 at ¶ 19.

[46] *Id.*

[47] *Id.* at ¶ 20.

[48] *Id.* at ¶ 23.

[49] *See* ECF Doc. No. 103.

[50] *See id.* at ¶ 28.

[51] *See id.* at ¶ 39.

[52] *See id.* at ¶ 47.

[53] *Id.*

[54] *See* ECF Doc. No. 151 at ¶ 4.

[55] *Id.* at ¶ 13 (quoting *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972)).

[56] *See* ECF Doc. No. 191.

[57] *Id.* at 1.

[58] *See id.*

[59] *Id.*

[60] *Koslow v. Pennsylvania*, 302 F.3d 161 (3d Cir. 2002).

[61] *See* ECF Doc No. 191 at 1-2.

[62] *See* ECF Doc. No. 206.

[63] *Id.* at ¶ 2 (citing Fed. R. Civ. P. 72(b)(3)).

[64] *Id.*

[65] *See id.* at 12.

[66] *See id.* at 17.

[67] *See id.* at 17-18.

[68] *See id.* at 18-19.

[69] *Id.* at 19 (citing *Buckely v. Fitzsimmons*, 509 U.S. 259, 268-69 (1993)).

[70] *See id.* at 19-20.

[71] *See id.* at 21.

[72] *See* ECF Doc. No. 208.

[73] *See* ECF Doc. No. 246 at ¶ 5.

[74] Fed. R. Civ. P. 17(c)(2).

[75] *Powell v. Symons*, 680 F.3d 301, 303 (3d Cir. 2012).

[76] *Id.*

[77] *See, e.g.*, *Fladger v. Trenton Psychiatric East 2 Treatment Team*, No. 12-5982, 2013 WL 3271018, at *3-4 (D.N.J. June 27, 2013) ("Nothing in the psychiatric and medical records . . . Plaintiff has submitted suggests any significant deficit in his psychological or intellectual functioning. To the contrary, the submissions drafted by Plaintiff demonstrate a clear memory of the November 22, 2010, incident as well as an ability to articulate his theory as to why he should recover damages. Accordingly, this Court will not, at this time, conduct a Rule 17 hearing or appoint a representative."); *Giles v. Pumphrey*, No. 13-1065, 2014 WL 1510428, at *2 (D. Del. Apr. 15, 2014) ("It is undisputed that plaintiff receives treatment for bipolar disorder. However, the record indicates that plaintiff is stable. Plaintiff has filed numerous pleadings in this case. The pleadings are articulate, well-reasoned, and address the issues raised in the complaint. In addition, there is no verifiable evidence that plaintiff is unable to understand the legal proceedings he initiated. For these reasons, the court finds that the medical evidence of record is sufficiently unpersuasive to support a finding of incompetency. Under the circumstances, the evidence of incompetency fails to support a conclusion that plaintiff is incompetent. Inasmuch as there is no substantial question regarding the competence of plaintiff, it is not necessary to conduct a Rule 17(c) competency hearing.").

[78] *See, e.g.*, *Kostyshyn v. Morgan*, No. 13-364, 2014 WL 1466599, at *8 (D. Del. Apr. 15, 2014) ("In the instant action, petitioner's statements are sufficiently unpersuasive to support a finding of incompetency. There is no documentation that petitioner has been adjudicated incompetent, no verifiable evidence of record regarding petitioner's mental health issues (other than his own statements), and no evidence that petitioner is unable to understand the legal proceedings he has initiated. In fact, petitioner has filed numerous documents in this case which sufficiently address the issues raised in his application. The court also notes that petitioner has initiated, and sustained, more than twenty other proceedings in this court demonstrating his ability to understand his rights and court procedures. Thus, having concluded that there is no substantial question regarding petitioner's competence, the court also concludes that petitioner's medical and mental health allegations do not require the court to provide representation.").

[79] *See* ECF Doc No. 264.

[80] *Id.* at 4.

[81] *Id.*

[82] *Id.* at 6.

[83] *See Snider v. Gilmore*, No. 18-735, 2019 WL 3816957, at *1 (W.D. Pa. Aug. 14, 2019) ("[Mr. Snider] states repeatedly in his Objections that he is competent to represent himself. (E.g., Objections at 3 ("Mr. Snider does not believe he is currently incompetent."); id. at 10 ("[H]e does not believe he is currently incompetent."))).

[84] *Powell*, 680 F.3d at 307.

[85] *Ferrelli v. River Manor Health Care Center*, 323 F.3d 196, 201 (2d Cir. 2003).

[86] *Powell*, 680 F.3d at 307; *see also Fields v. Venable*, 674 F. App'x 225, 227 n.1 (3d Cir. 2016) (per curiam) (noting "federal district courts have a duty of inquiry to determine whether there is verifiable evidence of the incompetence of a pro se litigant."); *Winter v. Hyde*, No. 17-1280, 2019 WL 2022253, at *1-2 (D. Del. May 8, 2019), *appeal docketed*, No. 19-2142 (3d Cir. May 21, 2019) ("In the instant action, while Plaintiff makes allegations of mental illness, she has failed to submit any verifiable evidence of incompetence.").

[87] *Id.* (quoting *Ferrelli*, 323 F.3d at 201).

[88] *Id.* (quoting *Hudnall v. Sellner*, 800 F.2d 377, 385 (4th Cir. 1986).

[89] The distinction between an "inquiry" and a "hearing" is unclear; courts have "inquired" into a litigant's competency without holding a hearing. Often this occurs through a review of medical records.

[90] *Brooks v. Bledsoe*, No. 12-0067, 2015 WL 13357961 (M.D. Pa. Mar. 11, 2015).

[91] Much case law arises in the context of a motion for appointment of counsel. Often, the court simultaneously addresses the Rule 17 issue under *Powell*.

[92] *Brooks*, 2015 WL 13357961, at *2.

[93] *See Tejada v. DelBalso*, No. 18-1096, 2018 WL 6047081, at *2 (M.D. Pa. Nov. 19, 2018).

[94] *Id.*

[95] *Wright v. Wenerowicz*, No. 14-0245, 2018 WL 1081982 (E.D. Pa. Feb. 28, 2018).

[96] *Id.* at *1.

[97] *Id.*

[98] *Id.* at *3 (quoting *Powell*, 680 F.3d at 308).

[99] *Id.*; *see also Pettaway v. Overton*, No. 13-213, 2014 WL 3747672, at *1 (W.D. Pa. July 29, 2014) (district court, citing *Powell*, appointed counsel based on plaintiff's adjudicated mental illness in an earlier criminal matter).

[100] Several decisions mention a district court determined competency while not addressing how it did so. *See, e.g.*, *Hartmann v. Carroll*, 582 F. App'x 111, 112 (3d Cir. 2014) (mem.) ("On remand, the District Court determined . . . Hartmann . . . neither incompetent, for purposes of Rule 17(c) . . . ."); *Jackson v. Domzalski*, 598 F. App'x 811, 812 n.2 (3d Cir. 2015) (per curiam) ("We interpret the Magistrate Judge's March 3, 2014 order to rule . . . it was unnecessary to appoint a representative to assist Jackson pursuant to Rule 17(c) of the Federal Rules of Civil Procedure. This conclusion was within the Court's discretion.").

23

[101] *Jackson v. Pennsylvania Department of Corrections*, No. 14-1604, 2015 WL 2345609 (W.D. Pa. May 15, 2015).

[102] *Id.* at *1.

[103] *Id.*

[104] *Id.* at *4.

[105] *See id.*

[106] *Id.*

[107] *Alston v. Parker*, No. 95-6158, 2010 WL 3283521, at *1 (D.N.J. Aug. 17, 2010).

[108] *See id.*

[109] *See id.*

[110] *See id.*

[111] This occurred prior to our Court of Appeals' decision in *Powell*.

[112] *Cyntje v. Government of the Virgin Islands*, 95 F.R.D. 430, 431 (D.V.I. 1982), *aff'd sub nom Cyntje v. Government of Virgin Islands*, 782 F.2d 1027 (3d Cir. 1985).

[113] *Id.* at 432.

[114] *Id.*

[115] *Id.* at 433.

[116] *Id.*

[117] *Williams v. Rickman*, 759 F. App'x 849, 851 (11th Cir. 2019) (per curiam).

[118] *Id.* (quoting *Powell*, 680 F.3d at 308); *see also Himchak v. Dye*, 684 F. App'x 249, 252 (3d Cir. 2017) (per curiam) (noting the state court handling Mr. Himchak's criminal proceedings found Himchak incompetent to stand trial); *Davis v. Walker*, 745 F.3d 1303, 1307 (9th Cir. 2014) ("The magistrate judge recognized . . . Davis has been found incompetent in his pending federal habeas proceeding and . . . currently receiving long-term involuntary psychotropic medication as directed by the state court order.")

[119] ECF Doc. No. 264 at 4-5.

[120] *Richards v. Duke University*, 166 F. App'x 595 (3d Cir. 2006) (per curiam).

[121] *Id.* at 598 (citing *Thomas v. Humfield*, 916 F.2d 1032, 1035 (5th Cir. 1990)).

[122] Pa. R. Civ. P. 2051.

[123] ECF Doc. No. 277 at 7.

[124] *Id.*; ECF Doc. No. 277-3 at 4; ECF Doc. No. 277-28 at 3.

[125] ECF Doc. No. 277-4 at 14 (emphasis added).

[126] *Tejada*, 2018 WL 6047081, at *2 (citing *Powell*, 680 F.3d at 307; *Monroe v. Bryan*, 881 F. Supp. 2d 623, 628 (D. Del. 2012)).

[127] ECF Doc. No. 246.

[128] Fed. R. Civ. P. 42(a)(2).

[129] *Id.*

[130] *See In re Community Bank of Northern Virginia*, 418 F.3d 277, 298 n.12 (3d Cir. 2005).

[131] *See McClenaghan v. Turi*, No. 11-3761, 2011 WL 4346339, at *1 (E.D. Pa. Sept. 16, 2011).

[132] *See Graudins v. Retro Fitness, LLC*, 921 F. Supp. 2d 456, 468 (E.D. Pa. 2013).

[133] *Easterday v. Federated Mutual Insurance Co.*, No. 14-1415, 2015 WL 1312684, at *2 (E.D. Pa. Mar. 24, 2015).

[134] ECF Doc. No. 237.

[135] ECF Doc. No. 248 at 1.

[136] *Id.* (citing No. 18-801, ECF Doc. No. 28)).

[137] *Easterday*, 2015 WL 1312684, at *5.

[138] *See* ECF Doc. No. 248 at 2.

[139] *Powell*, 680 F.3d 301 (3d Cir. 2012).

[140] *Id.* at 303; *see also A.P. ex rel. Phinisee v. United States*, 736 F. App'x 309, 312-13 (3d Cir. 2018) (per curiam) ("The responsibility for determining whether a situation warrants appointment of a guardian *ad litem* 'appears generally to be left to the discretion of the district courts.'").

[141] *See Snider,* 2019 WL 3816957, at *1 ("[Mr. Snider] states repeatedly in his Objections that he is competent to represent himself. (*e.g.,* Objections at 3 ("Mr. Snider does not believe he is currently incompetent."); *id.* at 10 ("[H]e does not believe he is currently incompetent."))).