## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **JOEL SNIDER** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 15-951** |
| | : |
| **PENNSYLVANIA DEPT. OF** | : |
| **CORRECTIONS, et al.** | : |
| | |
| **JOEL SNIDER** | : **CIVIL ACTION** |
| | : |
| **v.** | : **NO. 18-801** |
| | : |
| **OFFICER MCKEEHAN, et al.** | : |

## MEMORANDUM

**KEARNEY, J.**                                                                                              **January 13, 2020**

Joel Snider is serving a thirty to sixty-year sentence in state prison after his August 2014 plea of guilty but mentally ill to a July 2010 third degree murder and burglary in this District. As our Court of Appeals recently instructed in *Geness v. Cox*, mentally ill persons may proceed on Americans with Disabilities Act claim against the state.[1] But we first need to know if the prisoner is suffering a disabling level of mental illness. Our review is hampered when the prisoner proceeds *pro se* and does not provide grounds to qualify for a guardian *ad litem* other than his unsupported claims contradicted by his conduct and earlier judicial findings. He seems to agree he is not constitutionally entitled to counsel in his civil cases. He instead argues the judicial system and prisons must provide him accommodations as a self-described mentally ill prisoner so he can better access the civil courts.

Mr. Snider is now entering his seventh year of *pro se* litigation challenging accommodations provided to him in state and federal courts, conditions of his custody, and arguing

state actors retaliate against him for his grievances. He is also pursuing Post-Conviction Relief Act claims in state court challenging his 2014 guilty plea. He apparently has not exhausted state court remedies, nor has he sought habeas relief seeking to vacate his guilty plea. He instead filed at least four actions in this District and two in Western District of Pennsylvania with largely the same arguments although focused on different prisons. We now have four federal trial judges reviewing the same or very similar prison treatment issues as well as state court judges reviewing his guilty plea. We *sua sponte* raised the issue of consolidating these two cases before us but the state actor defendants argued the federal cases are not related given different correctional facilities and defendants. Mr. Snider has yet to get near a trial date; he has not proceeded beyond the pleadings before us.

Our review is more complicated by Mr. Snider *pro se* appealing interlocutory Orders continuing to divest trial courts of jurisdiction: *e.g.,* he now has five matters in our Court of Appeals, including an appeal of our Order denying him a volunteer guardian *ad litem* and our Order denying him permission to appeal this same interlocutory order. We cannot determine whether Mr. Snider has valid federal claims in many instances because we cannot get to the merits of his pleadings. We are not presently aware of an attorney willing to represent Mr. Snider. Even if we did know of an attorney, we are not certain Mr. Snider will listen to an attorney as he claims attorneys representing him erred in both his criminal case warranting post-conviction relief and in the 2013 case in this District where volunteer counsel settled a claim for him but he now wants to vacate the settlement claiming his volunteer counsel did not consult with him.

In his latest series of filings, Mr. Snider *pro se* asks all the four federal judges with the six cases to consolidate earlier filed cases in this District into later filed cases in the Western District of Pennsylvania. We cannot and will not do so today as to the cases before us as there is no

2

articulated basis to transfer venue today and, even if we did transfer, the transferee district would need to consolidate.

But we must now stay the resolution of nine pending motions to dismiss in Mr. Snider's 2015 case at No. 15-951 before us because he appealed an interlocutory decision in No. 15-951 after we told him twice he could not do so. These appeals could be considered frivolous which would not stay our ongoing progress for all the reasons in our detailed findings in support of our September 30, 2019 Order denying a guardian *ad litem*. But his arguments have marginal validity and the issues affect all aspects of his case at No. 15-951 as he claims he is incompetent to proceed without a guardian *ad litem* and appointment of counsel in this civil action and presumably others. This same argument arguably applies to No. 18-801 also before us with two pending and briefed motions to dismiss.

In accompanying Orders, we deny Mr. Snider's motions for consolidation but unfortunately must stay the progress of No. 15-951 and No. 18-801 and direct all parties to file no further briefing in either of these two cases until jurisdiction is vested back in our Court. Absent further grounds, we will not transfer venue of No. 15-951 as the claims arise in this District. We may transfer venue of No. 18-801 as it arises from conduct in the Western District of Pennsylvania but not until after our Court of Appeals resolves the present appeal of our September 30, 2019 Order in No. 15-951 denying a guardian *ad litem*. We deny relief in the third case at No. 18-1789 as there is no matter before us after we dismissed the case and Mr. Snider appealed our dismissal.

## I. Background

Police arrested Joel Snider in July 2010 for murder and other charges arising from the shooting death of Sudharman Joseph Fenton in Union County, Pennsylvania.[2] After an October 12, 2010 preliminary hearing, a magisterial district judge found sufficient evidence to detain Mr.

3

Snider for trial. Mr. Snider alleges he spent time as a pre-trial detainee at the Union County prison, the Snyder County prison, the Clinton County Correctional Facility, the Pennsylvania Department of Corrections, and Torrance State Hospital from September 2010 to August 2014.

On August 8, 2014, Mr. Snider entered a negotiated plea of guilty but mentally ill to one count of third-degree murder and one count of burglary.[3] The state court sentenced Mr. Snider to the agreed-upon aggregate sentence of thirty to sixty years' incarceration.[4] He is now incarcerated in the Western District of Pennsylvania.

## A. Mr. Snider's alleged disabilities.

Mr. Snider alleges he is disabled under the Rehabilitation Act (RA), 29 U.S.C. § 794, and Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131, 12181, because of mental illness and a hearing impairment.[5] Mr. Snider alleges diagnoses of attention deficit disorder, schizophrenia paranoid type or schizoaffective disorder bi-polar type, bi-polar I disorder with psychotic features, and post-traumatic stress disorder.[6] He alleges his mental illness substantially limits his brain function and adversely affects "nearly every aspect of his daily life, including his ability to care for himself and other major life activities such as sleeping, learning, reading, concentrating, socializing and communicating."[7] Mr. Snider alleges the Pennsylvania Department of Corrections "regards" Mr. Snider as having "personality disorders" including anti-social personality disorder, borderline personality disorder, and narcissistic personality disorder.[8] Mr. Snider alleges his lack of capacity prevents him from "meaningful court access." He claims a statutory right to counsel to allow him access to the civil courts.

## B. Mr. Snider's 2013 case before Judge Brann at No. 13-1226 appears to be on appeal.

Before pleading guilty but mentally ill to third degree murder in August 2014, Mr. Snider filed *Snider v. Motter*, No. 13-1226 pending before Judge Brann. In his Second Amended

4

Complaint, Mr. Snider alleged Warden Jaqueline Motter, Clinton County Correctional Facility, correctional officers, and nurses violated Mr. Snider's rights under the Eighth and Fourteenth Amendments and the ADA during pre-trial detention by using excessive force, deliberate indifference to medical needs, and discriminated against him on the basis of his disability by failing to provide him with a reasonable accommodation in violation of Title II of the ADA.[9] Mr. Snider alleges "numerous incidents of retaliation and harassment related to his religion and mental illness during his incarceration" at the Clinton County Correctional Facility, located in this District.[10]

After counsel from the Pennsylvania Institutional Law Project entered her appearance on behalf of Mr. Snider, the parties reached a settlement and agreed to a dismissal of the case on March 27, 2019. Mr. Snider then filed a notice of appeal challenging, among other orders, the stipulation of dismissal upon the parties' settlement. Mr. Snider's appeal is currently pending in our Court of Appeals at No. 19-1991.

## C. Mr. Snider pleads guilty but mentally ill to third degree murder and burglary.

On August 4, 2014, Mr. Snider pleaded guilty but mentally ill to third degree murder. His counsel submitted a sentencing memorandum.[11] The sentencing memorandum included reference Clarence Watson, J.D., M.D. psychiatric evaluation as requested by Mr. Snider's counsel in the criminal case.[12] After examination, Dr. Watson opined on (1) Mr. Snider's capacity to stand trial; and (2) Mr. Snider's mental state at the time of the offenses.

Dr. Watson concluded Mr. Snider possessed the mental capacity to assist his counsel in his defense and the capacity to stand trial on his current criminal charges, opining:

During my examination, Mr. Snider had no difficulty demonstrating competency-related knowledge and skills. He was well aware of the nature of the charges against him, appreciated the seriousness of the charges, acknowledged the evidence likely to be presented against him, and knew the potential penalties he could face if found guilty. He was easily able to discuss the roles and functions of important courtroom personnel. He was aware of the nature of the available plea process and demonstrated knowledge of basic

5

courtroom procedures. He did not demonstrate any deficits in his ability to assist his counsel in his defense.

Accordingly, Mr. Snider does possess the mental capacity to assist his counsel in his defense and the capacity to stand trial on his current criminal charges.[13]

Dr. Watson then opined on Mr. Snider's mental state at the time of the offenses, including four issues: (1) "whether Mr. Snider was suffering from mental disease or defect at the time of the acts with which he is charged"; (2) "whether Mr. Snider was laboring under such defect of reason, from disease of the mind, as not to know the nature and quality of the acts he was doing at the time of the offenses;" (3) "whether Mr. Snider was laboring under such defect of reasons, from disease of the mind, as not to know that what he was doing was wrong at the time of the offense"; and (4) "whether Mr. Snider, due to mental disease or defect lacked substantial capacity to conform his conduct to the requirements of the law at the time of the offenses."[14]

Dr. Watson opined, "with a reasonable degree of medical certainty that Mr. Snider was laboring under a mental disease or defect (Schizophrenia, Paranoid Type) which so impaired his reason on July 4 and July 5, 2010 [dates of the offenses] that with respect to the acts with which he is charged, he did not know the nature and quality of the acts, nor did he know the wrongfulness of the acts, nor did he have substantial capacity to conform his conduct to the requirements of the law."[15]

**D. Mr. Snider's three cases assigned to us.**

Three of Mr. Snider's six current cases are before us: *Snider v. Pennsylvania Department of Corrections*, No. 15-591; *Snider v. McKeehan*, No. 18-801; and, *Snider v. United States*, No. 18-1789.

### 1. Mr. Snider's complaint in No. 15-951 is now before our Court of Appeals as Mr. Snider seeks permission to appeal an interlocutory order.

In No. 15-951, Mr. Snider sues over seventy entities and individuals including the Commonwealth of Pennsylvania, the Pennsylvania Department of Corrections, the United States, the United States District Court for the Middle District of Pennsylvania, Pennsylvania's Unified Judicial System, the Pennsylvania Attorney General's office, various prison wardens and corrections officers. He claims each violated his rights under the ADA and RA, the United States Constitution, and Pennsylvania law. He alleges he is being excluded from programs and services in the state and federal court system and within the Pennsylvania Department of Corrections.

Mr. Snider's complained-of conduct can be broken into six broad categories:

a. Discrimination based on disability by denying access to the "programs, activities and services or judicial proceedings" of the Court of Common Pleas of Union County Pennsylvania in the underlying criminal case, *Commonwealth v. Snider*, from July 7, 2010 to the present. Complained-of conduct includes placement in solitary confinement; inadequate mental health care; inability to work with defense counsel in his criminal action because he became severely mentally ill as a result of prison conditions; his mental condition made him incompetent to accept a guilty but mentally ill plea; and feeling "coerced by the actions of the prison staff."[16] Mr. Snider alleges the Court of Common Pleas of Union County[17] "knew Mr. Snider had severe mental illness" but "during the course of his criminal case and appeal period, the court repeatedly failed to make accommodations for [his] disability excluding him from meaningful participation in their programs, activities and services, including judicial proceedings."[18]

b. Discrimination by the United States, the former Acting Attorney General of the United States, and the United States District Court for the Middle District of Pennsylvania based on disability by denying access to the "programs, activities and services or judicial proceedings" of the United States District Court for the Middle District of Pennsylvania from May 3, 2012 to the present.[19] Mr. Snider alleges the United States,

the former Acting Attorney General, and this District Court discriminated against him on the basis of his disability and excluded him from participation in judicial proceedings because the District Court knew he had severe mental illness and, rather than accommodating him, "took steps to confuse his participation and to take advantage of his expressions of mental illness and to punish him for such expressions" by "(a) filing documents in the wrong order, wrong case or wrong title; (b) using this to misconstrue his pleadings in motions, briefs, etc.; (c) punishing and making adverse comments due to his hypervigilant document filing or disorganized thinking; (d) using obstructive techniques and misconstruing pleadings to avoid his claims under the ADA and [RA] against [the Commonwealth, Pennsylvania Department of Corrections, Union County], etc.; (e) engaging in ex-parte mental health reviews of [his] competency by asking defendants who are biased and have an adverse interest, to report to the court on Mr. Snider's mental health."[20]  Because of his mental health disability, he doesn't know who to research ADA claims, he has been denied legal help at various prisons when he asked for help, and his "filings were repeatedly dismissed."[21]

c. Discrimination based on disability by denying access to programs and activities or services within the prison system.[22]  Mr. Snider alleges while incarcerated at State Correctional Institution ("SCI") Graterford in the Eastern District of Pennsylvania he "was not allowed" to participate in the programs and activities or services of the mental health unit there. He alleges from May 7, 2013 to the present, the Pennsylvania Department of Corrections excluded him from "numerous" programs, activities, and services because of his disability.[23]

d. Conditions of custody: Mr. Snider complains of being placed in solitary confinement as a pre-trial detainee beginning in December 2012, and abuse in various state prisons.[24]  He alleges the conditions of solitary confinement exacerbated the symptoms of his mental health disability obstructing his access to his criminal case. As a result of the abusive conditions of custody and the effect on his mental illness, Mr. Snider alleges he "was not competent to accept a plea in his criminal case of Guilty-But-Mentally-Ill."[25]  He alleges the Pennsylvania Attorney General's Office prosecuted him in the criminal case and treated him "as any other non-disabled defendant"; argued Mr. Snider should be housed in solitary confinement "due to behaviors which they knew to be caused by his mental health disability in the county prisons" and "did so despite knowing [he] has severe mental illness and knowing how solitary affected persons who had severe mental illness"; and encouraged conflict between Mr. Snider and his counsel in the criminal case.[26]  Mr. Snider alleges the Attorney General's Office took these actions against him to "obstruct [him] from presenting a case that his actions related to the charges in his criminal case were caused entirely by reason of disability" and "to prevent [him] from having meaningful participation in the [Union County Court of Common Pleas'] judicial proceedings", and "performed a psychiatric review ... for his mental health defense when he was not competent and took advantage of the circumstance to falsify the report in order to coerce and intimidate [him] into entering a plea bargain."[27]

e. Deliberate indifference to serious medical needs by the Commonwealth and Pennsylvania Department of Corrections. Mr. Snider alleges throughout his second amended complaint denial of adequate mental health care or denial of care altogether.[28]

f. Retaliation for filing grievances, "attempted court access, seeking mental health care, and for attempting to assist other disabled inmates:

1) between December 2012 and May 2013:[29] Mr. Snider alleges he complained to Defendant Shawn Cooper, Deputy Warden of the Snyder County prison, about abuse in the Snyder County prison. Snyder County prison is in the Middle District of Pennsylvania. Mr. Snider alleges Warden Shaffer and Deputy Warden Cooper retaliated against him for complaining by transferring Mr. Snider to the Clinton County Correctional Facility; Deputy Warden Cooper placed a false report in Mr. Snider's file he assaulted a female officer at Snyder County prison; Clinton County Correctional Facility staff harassed Mr. Snider with the intention to exacerbate his mental health illness and to cause harm to the defense of the criminal action in *Commonwealth v. Snider*; Clinton County Correctional Facility staff obstructed Mr. Snider's access to medical care and medications; Clinton County Correctional Facility Defendants Ronald Nolte, Michael Shearer, Darby Hughes, Tyler Walker, Joshua Richards, and an "Officer Edger" created "false documentation and numerous disciplinary sanctions based on the resulting behavior of Mr. Snider"; Mr. Snider again tried to file grievances, and retaliation in the form of abuse and discrimination intensified; Clinton County Correctional Facility Defendants Nolte, Shearer, Richards, and others stole Mr. Snider's pens and obstructed his ability to purchase paper, pens, and paper; false disciplinary reports continued to be made and put into Mr. Snider's file; Defendants transferred Mr. Snider to the Pennsylvania Department of Corrections on May 7, 2013 and placed him in solitary confinement; Mr. Snider was denied a hearing and "was not put through and PA DOC classification"; Defendants denied Mr. Snider access to his defense counsel; Defendant Sergeant Romig forced Mr. Snider to "mail home" or "have destroyed" his Hindu prayer beads, prayer rug, and other religious items; Defendants transferred Mr. Snider to Coal Township County prison and placed him in solitary confinement; after Mr. Snider complained to Commonwealth Defendants Miller, Luscavage, Mooney, and Wetzel about conditions in solitary confinement, Defendants threatened and punished him, obstructed Mr. Snider's attempt to appeal placement in solitary confinement, "obstructed the process and punished" Mr. Snider after he filed grievances, obstructed Mr. Snider's "meaningful access to his defense counsel" including being denied visits with counsel, and when Mr. Snider's defense attorneys requested a transfer back to a county prison, Warden Shaffer said he would only do so if Mr. Snider stopped filing grievances. All of these actions "made Mr. Snider's criminal case more difficult" as threatened by Defendant Cooper.[30]

2) Retaliation in August 2014: Mr. Snider alleges he remained in solitary confinement in retaliation for reading a statement in court during his August

2014 plea regarding prison conditions and how it affected his mental health and "court access" in his criminal case; he appealed his placement in solitary confinement to Defendant Wetzel; denial of medical treatment including medication; a transfer to SCI Camp Hill;[31] upon arrival at SCI Camp Hill, Defendant Corrections Officers McKeehan and Nichtman told Mr. Snider they would destroy his legal files and religious items if he did not "mail them home"; when Mr. Snider asked to appeal Officers McKeehan's and Nichtman's decision to either destroy his property or mail it home, Defendants yelled at him and grabbed him, banged his head against the wall, wrote a false disciplinary note, and placed Mr. Snider in solitary confinement; his legal files were stolen, religious items were damaged or stolen; denial of psychiatric medicine, food, recreation, pens, paper, cleaning supplies, a working toilet, and a phone all allegedly as a result of his grievances; and Defendants made him carry heavy boxes with his personal property while moving from cell blocks.[32]

3) Retaliation from May 7, 2013 to the present: Mr. Snider alleges after transfer to the Pennsylvania Department of Corrections on May 7, 2013, Defendant Sergeant Romig forced him to "get rid of" his religious items and threatened retaliation for any attempted court access; placement in solitary confinement for fifteen months; after submitting grievances about solitary confinement and the loss of religious items, Defendant Longenderfer or supervisors put Mr. Snider in a cell without a working toilet, flooded his cell, and tore apart one of his remaining religious books; while at SCI Coal Township,[33] the medical staff falsified his mental health records to "make it appear as if he did not have mental illness" and then harassed him when he asked for mental health care, refused to document his symptoms, ignored medical records, and characterized him as "malingering"; punishment at SCI Coal Township in August 2014 (same conduct as alleged in ECF Doc. No. 237 at ¶¶ 171-224) for complaining about solitary confinement; and when transferred to SCI Greene,[34] denied medical care when requested and when he attempted to file grievance at SCI Greene and to assist other disabled inmates in the grievance procedure, the medical staff there denied him psychiatric medications; when he filed his complaint in this action on May 7, 2015, Defendant Correction Officer King wrote a false misconduct report, denied him medication, and refused to allow Mr. Snider to call witnesses in a later misconduct hearing and placed him in solitary confinement; Defendant Sanders harassed him about his litigation; SCI Greene staff denied Mr. Snider meals, recreation, showers, and groups; refused to give Mr. Snider a hearing test; and mailroom staff at SCI Waymart[35] destroyed his mail and religious items.[36]

Mr. Snider seeks declaratory relief each of these Defendants violated his rights; damages; injunctive relief to "address ongoing retaliation, obstruction, defamation, exclusion and failure to accommodate"; "a name clearing hearing"; costs, and other relief we deem equitable.

After reviewing dozens of his filings where he repeatedly sought relief for being denied access to the courts as a person with an alleged mental illness, we *sua sponte* ordered the parties show cause why we should not hold an evidentiary hearing and review medical records relating to Mr. Snider's mental condition.[37] We simultaneously denied Mr. Snider's request for appointment of counsel in a civil proceeding but, concerned he may need a guardian *ad litem*, we stayed an analysis of Union County's and Warden Shaffer's pending motion to dismiss his second amended complaint.[38] Mr. Snider sought an extension and then appealed our interlocutory order.[39] Our Court of Appeals recently dismissed the appeal for lack of jurisdiction, returning the case to us.[40] On September 30, 2019, we found no grounds to appoint a guardian *ad litem:* "Based on Mr. Snider's own statement of competency, his vigorous and thorough advocacy in this and other actions, the lack of adjudication of incompetency by any court, and lack of medical evidence demonstrating mental illness of the type rendering him legally incompetent, we conclude Mr. Snider is competent under Fed. R. Civ. P. 17(c)(2)."[41]

Nine groups of Defendants moved to dismiss. After granting Mr. Snider extensions to respond by January 3, 2020, he has not timely opposed the motions to dismiss.[42]

## 2. Mr. Snider's complaint in No. 18-801 is subject to two pending and briefed motions to dismiss.

Mr. Snider brought another case in 2018 at No. 18-801 to "address the impeding and frustrating of [his] attempts to have meaningful court access for the claims he is attempting to present in" No. 15-951.[43] He continues to complain he has a severe mental health disability which prevents him from prosecuting his claims in No. 15-951. He continues to complain about retaliation for attempting to pursue legal claims and filing grievances.

This 2018 complaint covers the time period beginning July 2017 and the conduct of prison officials at SCI Somerset.[44] Mr. Snider alleges "prison authorities at SCI Somerset have

11

consistently refused to provide [him] with meaningful court access, frustrating and impeding his claims" and "[t]here is no legal assistance program to any inmate at SCI Somerset, no matter how disabled."[45] Mr. Snider alleges repeated harassment at SCI Somerset exacerbates his symptoms of mental health disability making his court access even more difficult and affecting his court access in his Post-Conviction Relief Act and direct appeals in his criminal case in state court.[46]

He claims retaliation for attempted court access and for helping other inmates with grievances in violation of the First, Eighth, and Fourteenth Amendments and the anti-retaliation provision of the ADA; supervisory liability for failing to address repeated constitutional violations; defamation in violation of the Fifth and Fourteenth Amendments and state law; an "official cover up" of legal claims in violation of the First and Fourteenth Amendments and anti-retaliation provision of the ADA; liability for a policy or practice of retaliation for attempted court access in violation of the First and Fourteenth Amendments and the anti-retaliation provision of the ADA; Eighth Amendment deliberate indifference to medical needs and state law malpractice and negligence claims; disability discrimination under the ADA and RA and "regarded as disabled" resulting in exclusion from programs, activities and services; and, denial of meaningful access to the courts in violation of the First and Fourteenth Amendments.

Defendants moved to dismiss. Mr. Snider filed oppositions to the motion to dismiss. The substantive issues are now ripe for our decision.

### 3. Our dismissal of Mr. Snider's complaint at No. 18-1789 is now on appeal.

On September 10, 2018, Mr. Snider brought another case at No. 18-1789 against the United States and the United States District Court for the Middle District of Pennsylvania under the Rehabilitation Act alleging the United States and the District Court excluded him from participation in District Court's programs and activities because of his mental health disabilities.

12

Mr. Snider alleged he "attempted to participate in the court's programs between May 3, 2013 and the present day"; "[t]he court knew of his mental health disability and saw how it adversely affected his ability to present his pleadings, pursue his arguable claims and have them fairly review by the court"; but nevertheless "the court repeatedly failed to make accommodations for his disability or to make modifications to their rules and policies."[47]

Mr. Snider complains the District Court violated the Rehabilitation Act by failing to accommodate his mental health diagnoses in his prosecution of two other cases pending before it: *Snider v. Motter*, No. 13-1226 and *Snider v. Pennsylvania Department of Corrections*, No. 15-951. In each of these actions, Mr. Snider complains about the treatment he received in prison including the denial of adequate medical care for his mental health diagnoses and placement in solitary confinement and other mistreatment in retaliation for filing lawsuits all of which prevented his ability to prosecute his claims. Mr. Snider complains the court in both actions denied him counsel and denied his motions for leave to amend his complaints and extensions of time to file notices of appeal. He claims all this conduct—treatment in prison and the District Court's orders—work to exclude him from participation in the District Court's "programs and activities."

When Mr. Snider filed this original complaint in September 2018, he also moved for leave to proceed *in forma pauperis*.[48] On October 2, 2018, we granted his motions for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915(b) and dismissed his complaint with prejudice for lack of subject matter jurisdiction without leave to amend because the United States and the District Court are immune from suit under the Rehabilitation Act and an amended complaint against them is futile.[49] In our Memorandum, we explained Mr. Snider cannot sue the District Court under the Rehabilitation Act because he is disappointed with its orders, the United States and its federal courts are immune from suit, and the Rehabilitation Act does not apply to the District Courts.[50]

13

On January 4, 2019, Mr. Snider moved for leave to amend his complaint.[51] Mr. Snider sought to change his claim against the United States and the District Court from a Rehabilitation Act claim to a claim under the Americans with Disabilities Act and to add former Acting Attorney General Matthew Whitaker as a defendant.[52]

On January 7, 2019, Mr. Snider filed a notice of appeal to our Court of Appeals from the dismissal of his original complaint and the denial of his motion to file objections to our October 2, 2018 Order dismissing his case.[53] The same day, we denied Mr. Snider's motion for leave to amend his complaint reminding him his notice of appeal divested us of jurisdiction while the matter remains on appeal but denied his motion without prejudice to be renewed should he dismiss his appeal or we are otherwise again vested with jurisdiction.[54]

After withdrawing his notice of appeal, which our Court of Appeals granted, again moving for appointment of counsel which we denied without prejudice because of our lack of jurisdiction, Mr. Snider changed his mind, and filed a motion to withdraw his motion to withdraw his appeal. On November 15, 2019, the Court of Appeals denied Mr. Snider's motion to withdraw motion to dismiss the appeal, which it construed as a motion to reopen the appeal, and the motion for appointment of counsel and to reopen appeal.

Mr. Snider then petitioned for rehearing. On December 17, 2019, our Court of Appeals notified Mr. Snider any additional documents attached to the petition must be accompanied by a motion to file the exhibits attached to the petition for hearing as required by Local Appellate Rules. Our Court of Appeals directed Mr. Snider to file a motion or leave to attach exhibits to the petition for rehearing no later than December 31, 2019. Mr. Snider filed his motion for leave on December 26, 2019. The petition for rehearing remains pending before our Court of Appeals.

14

On January 3, 2020, we denied Mr. Snider's Motion to amend his complaint because his pending appeal in this action divests us of jurisdiction and because his proposed amendment to sue the United States, its officials, and the District Court appears to be futile.[55]

### 4. The Commonwealth Defendants opposed consolidation of Nos. 15-951 and 18-801 in response to our show cause order.

On January 18, 2019, we ordered the Commonwealth Defendants in case No. 15-951 to file a status memorandum explaining the relationship between case No. 15-951 and case No. 18-801 including the possibility of consolidating No. 18-801 into No. 15-951 and the relationship, if any, of the other named Defendants to the Commonwealth Defendants.[56] At the time of our Order, some defendants had already been terminated or not yet served with the second amended complaint.

The Commonwealth responded cases Nos. 15-951 and 18-801 should remain separated because they have separate and distinct facts and claims.[57] The Commonwealth explained the claims in No. 15-951 allege violations of the ADA and the First and Fourteenth Amendments beginning as a pre-trial detainee and span "an extensive period of time and relate to the specific conduct" of the Commonwealth Defendants and the Pennsylvania Department of Corrections, Secretary Wetzel, Corrections Officers McKeehan and Nichtman, Karen Kaskie, a psychiatric clinical nurse practitioner and SCI Coal Township, Union County, and Warden Shaffer. These claims arise in this District. By contrast, No. 18-801 involves allegations regarding Mr. Snider's incarceration and mental health from 2017 to the present including claims of retaliation at SCI Somerset in the Western District. The Commonwealth Defendants argued the claims in the two cases "stem from different and distinct time periods and are against different defendants from different institutions."[58] While the Commonwealth recognized both cases relate to Mr. Snider's alleged violations of his constitutional rights and mental health issues, it argued the two cases "are

15

not duplicative or connected in any way" because they "relate to distinct events and should remain separate."[59]

Mr. Snider disagreed with the Commonwealth's argument on the relationship between his cases at No. 15-951 and No. 18-801.[60] Mr. Snider argues his claims in No. 15-591 are the same as those he pursued in *Snider v. Corbett*, No. 13-1226. Mr. Snider contends his claims of retaliation and denial of court access occurred regardless of the prison in which he is incarcerated and the retaliation he experiences is caused by the same policy and practice of the Pennsylvania Department of Corrections.[61]

We did not consolidate the actions as we need to determine whether there is a claim in either of these cases before we consolidate.

## E. Mr. Snider's 2018 complaints in the Western District before Judges Cercone, Bissoon, and Lenihan.

Mr. Snider filed two cases currently pending in the Western District of Pennsylvania: (1) *Snider v. Wittig*, No. 18-703 assigned to Judge Cercone and referred to Judge Lenihan; and (2) *Snider v. Gilmore*, No. 18-735 assigned to Judge Bissoon and also referred to Judge Lenihan.

Mr. Snider filed *Snider v. Wittig* on May 25, 2018. Judge Lenihan granted Mr. Snider's motion to proceed *in forma pauperis*. On November 18, 2019, Mr. Snider filed a "Supplementary Complaint"[62] and on December 18, 2019 another "Supplementary Complaint."[63] He again sues the Pennsylvania Department of Corrections, Secretary Wetzel, Dr. Pillai (a defendant in No. 15-951), Dr. Sheikh (a defendant in No. 18-801), and others. He complains of "an ongoing pattern of indifference towards [his] mental health disability, outright refusal to provide any accommodations for his mental health disability and intentional impediment of his access-to-court with refusal to provide any additional modalities for meaningful access other than a law library and at times not even that."[64] He alleges "an intensely malicious desire to impede [his] access-to-court, to cover

16

up staff misconduct and also to impede [him] from helping other human beings voice their concerns when they are unable to understand how to do so themselves."[65] He again brings claims under the First, Fifth, Eighth, and Fourteenth Amendments, the RA, the ADA, a state law claim for intentional infliction of emotional distress, and a new claim under the Religious Land Use and Institutionalized Persons Act.[66]

Mr. Snider complains of conduct at SCI Greene (as alleged in No. 15-951, but SCI Greene is not a defendant in No. 15-951): improper medical care; denial of reasonable accommodations for his mental health disability for meaningful participation in programs and activities of the prison; retaliation for filing grievances; failure to train staff to respond to mentally ill prisoners; refusal to provide him assistance in practicing his religion including failure to arrange for Hindu worship service and, because he is a Hindu, prison officials refused to allow him to attend Christian worship services; failure to provide him accommodation in providing legal help by the prison librarian resulting in denial of meaningful court access; impeding his claims in *Snider v. Corbett*, No. 13-1226 (before Judge Brann) and *Snider v. Pennsylvania Department of Corrections,* No. 15-951; confiscation of religious items; impeding his mail; and false disciplinary charges. He claims violations of the ADA and RA; a claim alleging a pattern and practice of retaliation for protected acts and impeding prison access to court; a First Amendment violation and Religious Land Use and Institutionalized Persons Act for impeding his religious practice; retaliation for his attempted access to court and use of the prison grievance system and for providing other inmates with legal help in violation of the First Amendment, ADA and RA; a "hostile environment" in violation of the Eighth Amendment and state law intentional infliction of emotional distress claim; a "cover-up" in violation of the First Amendment; Eighth Amendment deliberate indifference to medical needs; procedural due process violation under the Fifth and Fourteenth Amendment and

17

Pennsylvania statute; and a denial of meaningful access to court in violation of the First Amendment.[67]

On December 19, 2017, Judge Lenihan denied Mr. Snider's Motion for review under Rule 17 requesting a guardian *ad litem*, citing our September 30, 2019 Memorandum in No. 15-951.[68]

Mr. Snider filed *Snider v. Gilmore* on June 5, 2018. Judge Lenihan granted Mr. Snider's motion to proceed *in forma pauperis*. Mr. Snider filed an Amended Complaint on November 15, 2019.[69]

In a September 6, 2019 Order, Judge Lenihan denied Mr. Snider's Motion for an order to perform a mental health evaluation seeking to compel his alleged treating physician to perform a mental health examination. She explained to Mr. Snider he should submit a request to his treating physician Dr. Bloom for an evaluation.[70] Mr. Snider objected to Judge Lenihan's Order which Judge Bissoon denied on November 6, 2019.[71]

On November 26, 2019, Judge Bissoon denied Mr. Snider's Motion to merge his two cases in the Western District of Pennsylvania finding Mr. Snider filed what appears to be the same complaint as in *Gilmore*, merger is inappropriate now since both actions present the same allegations, and there is no reason for two identical cases to be pending in the District. She dismissed the case without prejudice as duplicative of *Gilmore*, 18-703.[72] Judge Bissoon closed the case.

On December 17, 2019, Judge Bissoon vacated her November 26, 2019 Order after Mr. Snider explained his "Supplementary Complaint" is only meant to clarify his claims and to address defendants' motions to dismiss the complaint.[73] Judge Bissoon concluded filing his Supplementary Complaint as an Amended Complaint is error. Judge Bissoon vacated her

November 26, 2019 Order and reopened the case but denied Mr. Snider's motion to merge the cases.

Judge Bissoon's December 17, 2019 Order also vacated her November 26, 2019 Memorandum Order regarding a mental health evaluation. Judge Bissoon found Mr. Snider provided evidence from his treatment providers a court order is required for a mental health evaluation. She ordered Mr. Snider's current mental health providers at the facility where he is currently housed arrange for a mental health evaluation which should, to the extent possible, memorialize Mr. Snider's current diagnoses, primary symptoms and corresponding limitations, prescribed medications and the efficacy of the medications. Judge Bissoon's preference is for the evaluation to be performed by a mental health professional at the facility, but an evaluation by an independent physician is acceptable. Judge Bissoon ordered this evaluation completed by February 17, 2020.[74] This effort marks the second time a federal judge has examined Mr. Snider's competency for guardian *ad litem* purposes in one year.

## F. Mr. Snider's pending matters before our Court of Appeals.

Mr. Snider repeatedly appeals interlocutory orders delaying the progress on his case as we are divested (albeit temporarily) of jurisdiction. We are back in the same spot now as Mr. Snider filed four appeals and one writ of mandamus arising from the same conduct.

### 1. Appeal No. 19-1079.

On January 10, 2019, Mr. Snider appealed our decision in dismissing his case at No. 19-1789. In this most recently dismissed case, Mr. Snider sued the United States, the former acting Attorney General of the United States, and the United States District Court for the Middle District of Pennsylvania under the Rehabilitation Act alleging discrimination on the basis of his disability by "fail[ing] to provide him with reasonable accommodations for his disability, causing him to be

19

excluded from participation in and from receiving the benefits of their programs."[75] Finding the United States, the former acting Attorney General, and this Court immune from suit under the Rehabilitation Act, we dismissed Mr. Snider's complaint with prejudice for lack of subject matter jurisdiction without leave to amend as futile.[76]

Mr. Snider appealed our Order as well as our Order denying him leave to file objections or a motion for reconsideration. On October 30, 2019, Mr. Snider moved to withdraw his appeal which our Court of Appeals granted on November 1, 2019. Three days later, Mr. Snider changed his mind, filing a motion to withdraw his motion to withdraw his appeal. The Court of Appeals denied the motion, construing it as a motion to reopen the appeal. Mr. Snider petitioned for rehearing and our Court of Appeals directed Mr. Snider to move for leave to attach exhibits to his petition for rehearing. Mr. Snider filed his motion for leave to attach exhibits to his petition for rehearing which is presently pending.

### 2. Appeal No. 19-1991.

On May 6, 2019, Mr. Snider appealed ten orders entered by Judge Brann in *Snider v. Corbett*, No. 13-1226, including the Order dismissing claims against medical Defendants and an ADA claim against correctional officers after the settlement of Mr. Snider's claims obtained with the assistance of counsel from the Pennsylvania Institutional Law Project. Our Court of Appeals required Mr. Snider file a brief and joint appendix by December 30, 2019 but Mr. Snider moved for enlargement of time. On January 7, 2020, the Court of Appeals granted Mr. Snider's motion, allowing him a sixty-day extension to file his brief and appendix.

### 3. Appeal No. 19-8048.

On December 6, 2019, Mr. Snider appealed our September 30, 2019 Memorandum and Order and our December 2, 2019 Order in No. 15-951 after we twice denied him an opportunity

to file an interlocutory appeal. On December 26, 2019, he moved for leave to amend his petition for appeal due to his mental health disability and filed an amended petition the same day. On January 10, 2020, Mr. Snider filed "Appellant's Argument in Opposition of Dismissal." These matters remain pending. In this appeal, Mr. Snider is arguing we erred by finding him competent to proceed in this matter as he seeks a guardian *ad litem* and appointment of counsel.

### 4. Appeal No. 19-3942.

On December 20, 2019, Mr. Snider again appealed our September 30, 2019 and December 2, 2019 Orders in No. 15-951. He filed these appeals notwithstanding our denial of his right of permission to appeal. He again seeks an Order from our Court of Appeals as to appointment of a guardian *ad litem* following our extensive factual review. On December 24, 2019, our Court of Appeals advised Mr. Snider his appeal will be submitted to a panel for possible dismissal due to a jurisdictional defect. Mr. Snider did not respond to our Court of Appeals' jurisdictional question, instead moving for clarification of the Court's December 24, 2019 letter and a request for an extension of time to pay his filing fee and for responding to the jurisdictional question.

On January 10, 2020, the Court of Appeals denied Mr. Snider's motion for extension of time to pay the filing fees as unnecessary, and ordered Mr. Snider to pay the filing fee to the District Court or file a second motion to proceed *in forma pauperis* by January 22, 2020. The Court of Appeals granted Mr. Snider's motion for an extension of time to file a response to the Legal Division's December 24, 2019 letter regarding a possible jurisdictional defect to January 22, 2020. If Mr. Snider fails to pay the filing fee or file a motion for *in forma pauperis*, his appeal will be dismissed without further notice.

21

### 5. Writ of Mandamus at No. 19-3930.

On December 24, 2019, Mr. Snider petitioned for writ of mandamus requesting the Court of Appeals to order the United States District Court for the Western District of Pennsylvania in *Snider v. Wittig*, No. 18-703 and *Snider v. Gilmore*, No. 18-735 to (a) docket and file his legal documents; (b) serve court orders upon him; and (c) "Fed.R.Civ.P. 17 & appointment of Guardian ad litem [sic]." On December 24, 2019, the Clerk of the Court issued an order deferring action on the writ of mandamus pending the submission of the filing fee or a motion for leave to proceed *in forma pauperis* within fourteen days of the order. Mr. Snider did not comply with either option.

### G. Mr. Snider's Post-Conviction Relief Act efforts in state court.

On September 11, 2015, Mr. Snider filed a petition under the Post-Conviction Relief Act ("PCRA").[77] Attorney Brian W. Ulmer, appointed counsel for Mr. Snider, filed an amended PCRA petition on December 16, 2015. On November 9, 2016, the court entered an order granting the Commonwealth's motion to dismiss Mr. Snider's amended PCRA petition. Mr. Snider appealed the November 9, 2016 order, arguing the PCRA court erred in failing to grant him a hearing on his claims.[78]

In his PCRA petition, first filed *pro se* and later amended by his counsel, he raised claims "regarding [his] mental illness and whether his guilty plea was knowing, voluntary and intelligent."[79] The Pennsylvania Superior Court did not address the PCRA issues, but the procedural problems with Mr. Snider's open and unresolved notice of appeal which the Superior Court found should have been considered as a PCRA petition. On November 21, 2017, the Pennsylvania Superior Court remanded to the PCRA court.[80]

On remand, the PCRA court scheduled hearings for February 12, 2018, December 20, 2018, and April 1, 2019. The criminal docket from the Union County Court of Common Pleas

reflects a motion for appointment of new counsel filed by Attorney Ulmer but denied on June 22, 2018; Mr. Snider's motion to stay proceedings in July 2018 pending appointment of new counsel denied on July 3, 2018; a second motion for appointment of new counsel filed by Mr. Snider on December 7, 2018 on which the court scheduled a hearing on December 20, 2018; and, Mr. Snider's motion for continuance or for a bifurcated hearing on December 19, 2018 denied by the PCRA court.

On June 7, 2019, the PCRA court denied Mr. Snider's amended PCRA petition. Mr. Snider filed a notice of appeal on July 18, 2019.[81] Mr. Snider sought an extension of time to file his brief granted by the Pennsylvania Superior Court. On December 31, 2019, the Pennsylvania Superior Court ordered, within thirty days of its order, "the trial court shall conduct an on-the-record inquiry to determine whether [Mr. Snider] wishes to proceed with Brian W. Ulmer, Esquire or pro se ... If [Mr. Snider] wishes to proceed pro se, the trial court shall determine whether [Mr. Snider's] waiver of counsel is knowing, intelligent, and voluntary ...." The Pennsylvania Superior Court stayed all briefing pending the trial court's determination.

## H. Mr. Snider now *pro se* moves to transfer and consolidate all federal cases in one action in the Western District before Judge Bissoon.

We today specifically address Mr. Snider's Motions now before us to consolidate and transfer the three cases assigned to us, *Snider v. Pennsylvania Department of Corrections*, No. 15-951; *Snider v. McKeehan*, No. 18-801; and the now dismissed *Snider v. United States*, No. 18-1789; Judge Brann's case *Snider v. Motter*, No. 13-1226; and Judge Cercone's case, *Snider v. Wittig*, No. 18-703 pending in the Western District with and into Judge Bissoon's case, *Snider v. Gilmore*, No. 18-735 also pending in the Western District.

In all six motions, Mr. Snider asks we, Judge Brann, Judge Cercone, and Judge Bissoon consolidate and transfer all six cases into the later filed *Snider v. Gilmore*, No. 18-735 and stay all

23

cases except *Gilmore* pending (1) filing of an amended complaint in *Gilmore* to include all claims and pleadings from all cases; (2) filing a "supplementary complaint" in *Gilmore* "setting out how he is currently being frustrated from presenting and litigating his claims in a meaningful way"; (3) filing a "motion for restraining order" seeking an order against "prison authorities to ensure [his] meaningful opportunity to present his claims and the parties will litigate the motion"; (4) the question of Mr. Snider's "competency, partial incapacitation, limitations imposed by his mental health, etc [sic] and any resulting relief from the court which are currently pending in" *Snider v. Pennsylvania Department of Corrections*, No. 15-951; *Snider v. Wittig*, No. 18-703; and *Snider v. Gilmore*, No. 18-735 will be consolidated in *Gilmore* and the parties will continue to litigate those issues; (5) all motions to dismiss will be stayed until his appeals and mandamus action are resolved; and (6) if, after resolution of the appeals and mandamus action, Judge Bissoon "feels that the pleadings and claims presented in the consolidated amended complaint … cannot be joined in one action or that they would be better litigated in separate actions, the parties then litigate that issue."[82]

## II. Analysis

### A. As there is only one pending case before us not on appeal, and we lack the ability to consolidate with other Districts, we deny consolidation without prejudice.

Mr. Snider filed motions in all six pending federal cases to consolidate and transfer venue of all cases to the Western District. Federal Rule of Civil Procedure 42 governs consolidation and 28 U.S.C. § 1404 governs transfer of venue for convenience.

Federal Rule of Civil Procedure 42 provides a court may consolidate actions involving a common question of law or fact and "(1) joining for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay."[83] Whether to consolidate actions is within the discretion of the district court.[84] We "must

24

balance the potential for prejudice, expense, or confusion against the benefits of judicial economy."[85] The party moving for consolidation bears the burden of proof.[86] We "may deny a motion to consolidate if the common issue is not a principal one, if it will cause delay in one of the cases, or will lead to confusion or prejudice in the trial of a case."[87]

Consolidation may only be effected by the transferee court, here Judge Bissoon in *Snider v. Gilmore*, if we transferred our cases to the Western District under 28 U.S.C. § 1404(a).[88] We may transfer venue under § 1404(a) "[f]or the convenience of parties and witnesses, in the interests of justice" to "any other district or division where it might have been brought …."[89]

A plaintiff may move to transfer venue on convenience grounds under Section 1404(a).[90] "Of course, since the plaintiff chose the venue in the first place, naturally in most cases it will be the defendant who is seeking to change it."[91] Some courts within this circuit "conclud[e] that a plaintiff's motion for change of venue should be granted only when there are changed circumstances which have arisen since the time when the suit was instituted or when there is some basis in the interest of justice for transfer upon balancing the various § 1404(a) factors."[92] Other courts in this circuit "*may* require plaintiffs to show changed circumstances since initiating the action, but it is not a prerequisite to transfer. Rather, courts may consider the change in circumstances or *lack thereof*, as an additional factor, considered alongside the convenience and interests of justice factors."[93]

As the party moving for transfer of venue, Mr. Snider bears the burden of demonstrating "(1) the case could have been brought initially in the proposed transferee forum; (2) the proposed transfer will be more convenient for the parties and witnesses; and (3) the proposed transfer will be in the interest of justice."[94] Once Mr. Snider establishes his actions could have been brought in the proposed district—here, the Western District of Pennsylvania—we "must weigh several

private and public interest factors to determine whether the balance of convenience tips in favor of transfer" under *Jumara v. State Farm Ins. Co.*[95]

*Jumara's* private factors include (1) plaintiff's forum preference as manifested in the original choice; (2) defendant's preference; (3) whether the claim arose elsewhere; (4) convenience of the parties as indicated by their relative physical and financial condition; (5) convenience of the witnesses – but only to the extent the witnesses may actually be unavailable for trial; and (6) location of books and records (similarly limited to the extent that the files could not be produced in the alternative forum).[96]

*Jumara's* public interest factors include (1) enforceability of the judgment; (2) practical considerations to make the trial easy, expeditious, or inexpensive; (3) relative administrative difficulty in the two fora resulting from court congestion; (4) local interest in deciding controversies at home; (5) public policies of the fora; and (6) familiarity of the trial judge with the applicable state law in diversity cases.[97]

The analysis is "flexible and individualized," and we have "broad discretion in deciding a motion to transfer venue."[98] Although we have broad discretion, we must not grant a motion to transfer "without a careful weighing of factors favoring and disfavoring transfer."[99]

As explained, we are divested of jurisdiction at least as to actions No. 15-951 and 18-1789 because of Mr. Snider's currently pending appeals in those cases. Mr. Snider offers no basis to transfer other than convenience before one judge. Absent some basis under *Jumara*, we cannot transfer venue. We may consider a motion to transfer venue after we resolve the pending motions to dismiss Mr. Snider's complaint in No. 18-801 and after we consider the Defendants' arguments as to why we should not transfer claims arising from SCI Somerset in the Western District. We

26

are not aware of possible grounds to transfer No. 15-951 relating to conduct entirely within this District.

## B. We must stay further resolution of Nos. 15-951 and 18-801 given the appeal of our September 30, 2019 and December 2, 2019 Orders.

The filing of a timely notice of appeal generally divests us of jurisdiction over issues related to the appeal, with a few exceptions.[100] If we deem an appeal frivolous, we may continue adjudicating the case. "A district judge who concludes that an appeal is clearly frivolous may ignore the notice of appeal and proceed with the case as if the appeal had not been taken. To hold otherwise would enable a party to manipulate the court with dilatory tactics."[101]

Our Court of Appeals, in several circumstances, held District Court judges may retain jurisdiction upon finding an appeal frivolous. An appeal from an order denying a motion for arbitration "will not stay the district court proceedings if it is 'frivolous or forfeited.'"[102] A frivolous appeal from denial of a double jeopardy motion also fails to divest district courts of jurisdiction.[103] District Courts in our circuit retain jurisdiction upon finding appeals of other orders frivolous.[104]

Our Court of Appeals defined "[a] matter is not frivolous if any of the legal points are arguable on their merits."[105] If an appeal raises any legal points which are arguable on their merits, the appeal is not frivolous, and we may not proceed while the appeal is pending.

We twice denied Mr. Snider permission to file an untimely interlocutory appeal of our September 30, 2019 Order denying the appointment of a guardian *ad litem.* We carefully studied the records of his present capacity including the lack of a finding from any medical professional. After our examination of his medical records and consistent with our understanding of the governing law under Fed.R.Civ.P. 17, we found no basis for finding a volunteer guardian *ad litem* who would then possibly hire a volunteer lawyer. We also are familiar with the variety of his

27

arguments; he is always mindful of timely filings and seeks redress. His arguments often lack merit. But he proceeds as he is entitled to. He disagrees and now asserts he needs a guardian. He is appealing our September 30, 2019 Order denying him a guardian and is now seeking a second bite at the apple before Judge Bissoon in the Western District.

His legal points are marginally arguable. Given the nature of his arguments he is not competent notwithstanding our interlocutory orders, we err on the side of caution. We do so with hesitation. The over seventy Defendants in No. 15-951 moved to dismiss. The Defendants in No. 18-801 moved to dismiss. We await Mr. Snider's briefing in No. 15-951. The motions in No. 18-801 are ripe for decision. All Defendants wish to progress and resolve the claims. We trust our Court of Appeals will timely address the pending appeals of our interlocutory orders filed without permission and we will then have this issue behind us. Until then, we will stay further review of the pending motions to dismiss in both Nos. 15-951 and 18-801.

## III.   Conclusion

For almost seven years, prisoner Joel Snider has *pro se* files a flurry of papers in this District often arguing he needs counsel and now pursuing appointment of a guardian *ad litem*. When Judge Brann found counsel to volunteer on Mr. Snider's behalf, counsel settled his claims, some of which are nevertheless included in his complaint in No. 15-951, but Mr. Snider is now seeking to challenge that settlement and representation provided by his volunteer counsel. Mr. Snider's civil cases before us arise from the same general claims, but rather than allow us to address his claims he continues to appeal interlocutory decisions he views as adverse. In doing so, he repeatedly divests us of jurisdiction and further delays resolving his claims some of which focus on the right to counsel for allegedly mentally impaired persons in our civil cases.   We recognize

the importance of this civil rights issue under the ADA as described by our Court of Appeals in *Geness*.

We cannot consolidate our cases in this District into two later filed cases in the Western District of Pennsylvania. We may consolidate cases in our active docket into the first filed matter in this District. But Mr. Snider's first filed matter in 2013 before Judge Brann is now in the Court of Appeals and his second filed matter before us at No. 15-951 is also now on appeal. The appeal from Judge Brann's Order is from a final dismissal Order which, if affirmed by our Court of Appeals, would end further prosecution unless the Supreme Court accepted review. We are currently faced with the nine motions to dismiss in No. 15-951 as fully ripe as are the two motions to dismiss in No. 18-801. But given Mr. Snider's appeal of our September 30, 2019 Order finding no grounds to appoint a guardian *ad litem* based on the medical records and our extensive factual findings, we must defer to our Court of Appeals to resolve his challenge to our findings. As such, we must further delay and stay the resolutions of the motions to dismiss in No. 15-951. While there is no pending appeal precluding us from addressing the pending and briefed motions to dismiss in No. 18-801, the issues are the same and we cannot distinguish Mr. Snider's alleged lack of competency to proceed in No. 15-951 with a competency to proceed in No. 18-801.

In sum, we have long recognized resolving Mr. Snider's claims requires a substantive review of his claims beyond the procedural dance created by his activity. He is litigating in several courts with several cases. He creates this disorder and then seeks extensions and claims he cannot manage his litigation. He disavows lawyer advice and then seeks a guardian who will need a lawyer. But as Mr. Snider is now before our Court of Appeals on five different matters, we cannot proceed while he appeals our findings of his competence to proceed without a guardian *ad litem*. In the accompanying Orders, we deny Mr. Snider's Motion to consolidate, but stay the proceedings

29

in Nos. 15-951 and 18-801. We will not accept further pleadings or motions other than those

seeking immediate relief under the Prison Litigation Reform Act unless so directed by our Court

of Appeals after its review.

---

[1] 902 F.3d 344 (3d Cir. 2018). In a later, currently pending appeal in *Geness,* No. 19-2253, our Court of Appeals is revisiting this issue in the context of the potential ADA liability of the Administrative Office of Pennsylvania Courts relating to access to the courts for mentally ill persons but in the state court criminal procedures.

[2] *Commonwealth v. Snider*, No. 2013 MDA 2016, 2017 WL 5938815, at *1 (Pa. Super. Ct. Nov. 21, 2017).

[3] *Id.*

[4] *Id.*; *see also* ECF Doc. No. 277-3 at 2-3 (we use the pagination assigned by the CM-ECF docketing system).

[5] ECF Doc. No. 237 at ¶¶ 81-96 (Second Amended Complaint in No. 15-951). Mr. Snider alleges an unrelated lawsuit brought by the Disability Rights Network for prison abuses of inmates with mental health disabilities by "warehousing them in solitary confinement" evidences the "general attitude" of the Pennsylvania Department of Corrections and its employees toward disabled inmates. *Id.* at ¶¶ 97-104.

[6] *Id.* at ¶ 81.

[7] *Id.* at ¶¶ 82, 92.

[8] *Id.* at ¶ 91.

[9] *See* ECF Doc. No. 222 in No. 13-1226.

[10] *Id.* at ¶ 22.

[11] ECF Doc. No. 277-3 in No. 15-951.

[12] ECF Doc. No. 277-4 in No. 15-951 at 2-27 (using the pagination assigned by the CM-ECF docketing system).

[13] *Id.* at 13.

[14] *Id.* at 22-27.

[15] *Id.* at 27.

[16] ECF Doc. No. 237 at ¶¶ 7, 169, 170, 147-224 in No. 15-591.

[17] Mr. Snider names the Unified Judicial System of Pennsylvania as the defendant for the alleged conduct of the Court of Common Pleas of Union County. *Id.* at ¶ 14. Union County is in this District.

[18] *Id.* at ¶ 224.

[19] *Id.* at ¶¶ 8, 275-276, 277-288.

[20] *Id.* at ¶¶ 275-76.

[21] *Id.* at ¶¶ 277-88.

[22] *Id.* at ¶¶ 154, 274.

[23] *Id.* at ¶ 274.

[24] *Id.* at ¶¶ 105-146, 147-224.

[25] *Id.* at ¶ 169.

[26] *Id.* at ¶¶ 266-270.

[27] *Id.* at ¶¶ 271-273.

[28] *Id. see e.g.* ¶¶ 148, 151, 181, 193, 208, 216, 228, 235-238, 244, 248, 251-256, 292.

[29] *Id.* at ¶¶ 105-146. Allegations regarding conditions of confinement and retaliation during this time period are the subject of Mr. Snider's action *Snider v. Motter*, No. 13-1226 pending before the Honorable Matthew Brann. After counsel from the Pennsylvania Institutional Law Project entered her appearance on behalf of Mr. Snider, the parties reached a settlement and agreed to a dismissal of the case on March 27, 2019. Mr. Snider then filed a notice of appeal challenging, among other orders, the stipulation of dismissal upon the parties' settlement. Mr. Snider's appeal is currently pending in the Court of Appeals at No. 19-1991. Mr. Snider concedes "[t]he content of this abuse has been litigated in *Snider v. Motter*, No. 13-1226 resulting in settlement. However the sequence of retaliatory transfer out of discrimination, from [Snyder County Prison] to [Clinton County Correctional Facility] and from [Clinton County Correctional Facility] to [Pennsylvania Department of Corrections] has not been litigated." ECF Doc. No. 237 at 114, n.14.

In his Second Amended Complaint in *Snider v. Motter*, No. 13-1226, Mr. Snider alleges Warden Jaqueline Motter, Clinton County Correctional Facility, correctional officers, and nurses violated Mr. Snider's rights under the Eighth and Fourteenth Amendments and the ADA during pre-trial detention by using excessive force, deliberate indifference to medical needs, and discriminated against him on the basis of his disability by failing to provide him with a reasonable accommodation in violation of Title II of the ADA. *See* ECF Doc. No. 222 (Second Amended

Complaint) in No. 13-1226. Mr. Snider alleges "numerous incidents of retaliation and harassment related to his religion and mental illness during his incarceration" at the Clinton County Correctional Facility. *Id.* at ¶ 22. The Clinton County Correctional Facility is in this District.

[30] ECF Doc. No. 237 ¶¶ 105-146.

[31] SCI Camp Hill is in this District.

[32] ECF Doc. No. 237 at ¶¶ 171-224.

[33] SCI Coal Township is in this District.

[34] SCI Greene is in the Western District of Pennsylvania.

[35] SCI Waymart is in this District.

[36] ECF Doc. No. 237 at ¶¶ 225-262.

[37] ECF Doc. No. 246.

[38] *Id.*

[39] ECF Doc. No. 274.

[40] ECF Doc. No. 291.

[41] ECF Doc. No. 92 at p.18.

[42] ECF Doc. No. 356.

[43] ECF Doc. No. 28 in No. 18-801.

[44] SCI Somerset is in the Western District of Pennsylvania.

[45] ECF Doc. No. 28, Introduction at 2.

[46] *Id.*

[47] ECF Doc. No. 1 at 1 in No. 18-1789.

[48] ECF Doc. Nos. 5, 8.

[49] ECF Doc. No. 11.

[50] ECF Doc. No. 10. Our Memorandum provides a more detailed background of Mr. Snider's three lawsuits in this District.

[51] ECF Doc. No. 23.

[52] ECF Doc. No. 24.

[53] ECF Doc. No. 25.

[54] ECF Doc. No. 27. Mr. Snider sought to amend his complaint to bring claims against the United States, the District Court, and former Acting Attorney General Whitaker, in his official capacity, for violations of Titles II and III of the ADA, 42 U.S.C. §§ 12132, 12182. ECF Doc. No. 23-1.

[55] ECF Doc. No. 47.

[56] ECF Doc. No. 246 in No. 15-951.

[57] ECF Doc. No. 248.

[58] *Id.* at 2.

[59] *Id.*

[60] ECF Doc. No. 254.

[61] *Id.* at 4.

[62] ECF Doc. No. 71 (*Snider v. Wittig*).

[63] ECF Doc. No. 92. It is unclear which documents are the operative complaint. On December 23, 2019, Judge Lenihan ordered the United States Marshal to mail a copy of the original complaint (ECF Doc. No. 14) and the Supplement (ECF Doc. No. 71), notice of lawsuit and request for waiver of summons, and waiver, to defendants as directed by Mr. Snider. *See* ECF Doc. No. 90.

[64] ECF Doc. No. 71, Introduction at 1-2.

[65] *Id.* at 2.

[66] 42 U.S.C. §§ 2000cc, *et seq.*

[67] ECF Doc. No. 71.

[68] ECF Doc. No. 89 in *Snider v. Gilmore*.

[69] ECF Doc. No. 95.

[70] ECF Doc. No. 85.

[71] ECF Doc. No. 90.

[72] ECF Doc. No. 102.

[73] Compare ECF Doc. No. 92 with ECF Doc. No. 93.

[74] ECF Doc. No. 109.

[75] ECF Doc. No. 1 at ¶ 197.

[76] ECF Doc. No. 10, 11.

[77] 42 Pa. C.S. § 9541 *et seq.*

[78] *Commonwealth v. Snider*, No. 2013 MDA 2016, 2017 WL 5938815, at * 1 (Pa. Super. Ct. Nov. 21, 2017).

[79] *Id.*

[80] *Id.* at *2.

[81] *Commonwealth v. Snider*, 1161 MDA 2019 (Pa. Super. Ct.).

[82] *See Snider v. Pennsylvania Department of Corrections*, No. 15-951 at ECF Doc. No. 389; *Snider v. McKeehan*, No. 18-801 at ECF Doc. No. 90; *Snider v. United States*, No. 18-1789 at No. 48; *Snider v. Motter*, No. 13-226 at ECF Doc. No. 379 (Brann, J.); *Snider v. Wittig*, No. 18-703 at ECF Doc. No. 94 (Cercone, J. W.D. Pa.); and *Snider v. Gilmore*, No. 18-735 at ECF Doc. No. 115 (Bissoon, J. W.D. Pa.)

[83] Fed.R.Civ.P. 42(a).

[84] *Easterday v. Federated Mut. Ins. Co.*, No. 14-1415, 2015 1312684, at *2 (E.D. Pa. Mar. 24, 2015).

[85] *Id.* (citing *Mincy v. Chmielewski*, No. 05-292, 2006 WL 1997457, at *2 (M.D. Pa. July 17, 2006)); *Demchak Partners Ltd. P'ship v. Chesapeake Appalachia, LLC*., No. 13-2289, 2014 WL 4955259, at *10 (M.D.Pa. Sept. 30,2014) (citing *Mincy,* at *2).

[86] *Easterday*, 2015 WL 1312684 at *2 (citing *McClenaghan v. Turi,* No. 09-5497, 11-3761, 2011 WL 4346339, at * 1 (E.D. Pa. Sept. 16, 2011)).

[87] *Easterday*, 2015 WL 1312684 at * 2.

[88] 8 MOORE'S FEDERAL PRACTICE – CIVIL § 42.11[2][a] (2019).

[89] 28 U.S.C. § 1404(a).

[90] 17 MOORE'S FEDERAL PRACTICE – CIVIL § 111.16[1] (2019).

[91] *Id.*

[92] *See e.g. Valido-Shade v. Wyeth LLC*, No. 12-2003, 2014 WL 4794967, at * 2 (E.D. Pa. Sept. 26, 2014) (denying plaintiffs' motion for transfer of venue under § 1404(a)); *James v. Daley & Lewis*, 406 F. Supp. 645, 648 (D.Del. 1976) (denying plaintiff's motion for change of venue because plaintiff's articulated reasons for transfer did not arise after filing action).

[93] *See Fuller v. Insys Therapeutics, Inc.*, No. 17-7877, 2018 WL 4275992, at * 2, nn. 32, 33 (D.N.J. Sept. 6, 2018) (collecting cases) (denying plaintiff's motion to transfer venue). *But see Great W. Mining & Mineral Co. v. ADR Options, Inc.*, 882 F. Supp. 2d 749, 756-57 (D. N.J. 2012) (requiring plaintiff seeking to transfer venue under § 1404 to demonstrate a change in circumstance since the filing of the action warranting a change of venue and denying plaintiff's motion for change of venue).

[94] *Weedon v. Godlewski*, No. 13-7461, 2016 WL 538232, at *2 (E.D. Pa. Feb. 11, 2016) (citing 28 U.S.C. § 1404(a); *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)).

[95] *Id.* (citing *Jumara*, 55 F.3d at 879-80).

[96] *Jumara,* 55 F.3d at 879 (citations omitted).

[97] *Id.* (citations omitted).

[98] *Weedon*, 2016 WL 538232 at * 2 (citing *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988)).

[99] *Id.* (citing *Shutte*, 431 F.2d at 24-25).

[100] *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982), *Mary Ann Pensiero v. Lingle*, 847 F.2d 90, 97 (3d Cir. 1988).

[101] 20 MOORE'S FEDERAL PRACTICE - CIVIL § 303.32 (2019).

[102] *Tae In Kim v. Dongbu Tour & Travel, Inc.,* 529 F. App'x 229, 233 (3d Cir. 2013) (citing *Ehleiter v. Grapetree Shores, Inc.*, 482 F.3d 207, 215 n.6 (3d Cir. 2007)).

[103] *United States v. Leppo*, 634 F.2d 101, 105 (3d Cir. 1980).

[104] *See United States v. Wilkes*, 368 F. Supp. 2d 366, 367 (M.D. Pa. 2005) (interpreting *Leppo* to apply to any patently frivolous appeal). *See also Death Row Prisoners v. Ridge*, 948 F. Supp. 1282, 1286 (E.D. Pa. 1996) (applying *Leppo*'s reasoning, preventing the delay of judicial proceedings for tactical reasons, to interlocutory Eleventh Amendment appeals).

[105] *Dreibelbis v. Marks*, 675 F.2d 579, 580 (quoting *Anders v. California*, 386 U.S. 738, 744 (1967)).